## MICHEL *v.* LOUISIANA.

NO. 32.

Argued November 8–9, 1955.—Decided December 5, 1955.

*Gerard H. Schreiber* and *George H. Fust* argued the cause and filed a brief for petitioner in No. 32.

*Felicien Y. Lozes* and *Rudolph F. Becker, Jr.* argued the cause and filed a brief for petitioners in No. 36.

*Leon D. Hubert, Jr.* argued the cause for respondent in No. 32. *Adrian G. Duplantier* argued the cause for respondent in No. 36. With them on the briefs were *Fred S. LeBlanc,* Attorney General of Louisiana, and *Michael E. Culligan,* Assistant Attorney General.

MR. JUSTICE CLARK delivered the opinion of the Court.

Louisiana requires that objections to a grand jury be raised before the expiration of the third judicial day following the end of the grand jury's term or before trial, whichever is earlier.[1] In these cases we are asked to

---

[1] Section 202 of the Louisiana Code of Criminal Procedure, R. S. § 15:202, provides that:

"All objections to the manner of selecting or drawing any juror or jury or to any defect or irregularity that can be pleaded against any array or venire must be filed, pleaded, heard or urged before the expiration of the third judicial day of the term for which said jury shall have been drawn, or before entering upon the trial of the case if it be begun sooner; otherwise, all such objections shall be considered as waived and shall not afterwards be urged or heard."

In *State* v. *Wilson,* 204 La. 24, 14 So. 2d 873, appeal dismissed, 320

decide whether this statute as applied violates the Fourteenth Amendment. The three petitioners, all Negroes sentenced to death for aggravated rape, make no attack on the composition of the petit jury nor on the fairness of their trials but challenge the composition of the grand juries which indicted them on the ground that there was a systematic exclusion of Negroes from the panels. No hearing was held on these allegations because the lower courts found that the question had been waived. In each case the Supreme Court of Louisiana affirmed, 225 La. 1040, 74 So. 2d 207, and 226 La. 201, 75 So. 2d 333, and we granted certiorari, 348 U. S. 936 and 950, because of the importance of the issues involved.

Grand juries in Orleans Parish are impaneled in September and March to serve for six months. Since § 202 of the Louisiana Criminal Code, as interpreted, requires a defendant to object to the grand jury before three judicial days after its term, the time to raise such objections may vary from a minimum of three days—if the defendant is indicted on the last day of the term—to a much longer period if he is indicted during the term. Section 284 of the Louisiana Code of Criminal Procedure provides that in any case such objections must be made before arraignment.

We do not find that this requirement on its face raises an insuperable barrier to one making claim to federal rights. The test is whether the defendant has had "a reasonable opportunity to have the issue as to the claimed right heard and determined by the state court." *Parker* v. *Illinois,* 333 U. S. 571, 574; *Davis* v. *Wechsler,* 263 U. S. 22; *Central Union Co.* v. *Edwardsville,* 269 U. S. 190; *Paterno* v. *Lyons,* 334 U. S. 314. See *Carter* v.

U. S. 714, the Supreme Court of Louisiana interpreted the phrase "the third judicial day of the term" to mean "the third judicial day following the term." Such a construction has been adhered to, *State* v. *Chianelli,* 226 La. 552, 76 So. 2d 727, and is not open to attack here.

*Texas,* 177 U. S. 442. In *Avery* v. *Alabama,* 308 U. S. 444, this Court held that a lapse of three days between the appointment of counsel and the date of trial was not of itself a denial of due process. In Louisiana a motion to quash is a short, simple document, easily prepared in a single afternoon.[2] In the light of *Avery,* a three-day minimum for such a motion is not unreasonable. *Wilson*

---

[2] The motion to quash filed in Michel's case is as follows:

"Motion to Quash

"Now into this Honorable Court comes John Michel, defendant herein, and having heard the Indictment read and protesting that he is not guilty of the offense set out therein, moves to quash the said Indictment in its entirety, and to quash and set aside the general venire involved herein and to quash and set aside the Grand Jury Panel herein for the reason that in the proceedings prior to and attending the presentment of said Indictment, mover was deprived of due process of law and equal protection of law as guaranteed by the Constitution of the United States and the State of Louisiana as follows:

"1. Defendant is a member of the colored race.

"2. That considering the negro population of the Parish of Orleans and the number of negroes qualified for jury service, there has been systematic, unlawful and unconstitutional exclusion of negroes from the general venire and Grand Jury Panel and Grand Jury involved in the returning of the Indictment herein; that said systematic, unlawful and unconstitutional exclusion of negroes from said units has existed continuously prior hereto for a number of years in the Parish of Orleans; that said exclusion has existed because of race or color; that a negro has never served on a Grand Jury in the Parish of Orleans; that in those instances where negroes have been included in the general venire and Grand Jury Panels referred to herein, negroes have been discriminated against by an arbitrary and inapportionate [*sic*] limiting of their number by State officials who have not sufficiently acquainted themselves with the qualifications of all potential jurors.

"WHEREFORE, the said John Michel prays that this Motion to Quash be maintained and that the said Indictment, general venire and Grand Jury Panel be declared null and void and that he be discharged from said Indictment."

v. *Louisiana,* 320 U. S. 714.[3]   But in the circumstances of a particular case, the application of such a rule may not give a reasonable opportunity to raise the federal question.   See *Reece* v. *Georgia, ante,* p. 85, decided this day.   Accordingly we pass to a consideration of the facts in each of these cases.

*No. 32. John Michel.*—Michel was indicted by the grand jury on February 19, 1953, and was presented to the court for arraignment on February 23.   He appeared without counsel and the arraignment was continued for one week.   During that week, the trial judge talked with Mr. Schreiber, a former assistant district attorney with wide experience in local criminal practice.   He asked Mr. Schreiber whether he would take the case if private counsel was not retained.   The judge indicated that if Mr. Schreiber accepted, additional counsel would be appointed.

The term of the grand jury which indicted Michel expired March 2, 1953.   On that same date Michel appeared again for arraignment without counsel.   Mr. Schreiber was also present in court on other business and the trial judge then appointed him counsel for Michel.   Whereupon Mr. Schreiber asked the court to give him an opportunity to look it over and continue the matter for one week.   No mention of co-counsel was made, and the continuance was granted.

Thereafter, on March 5, Mr. Schreiber received a formal notice of his appointment which, though not required by Louisiana law, appears at times to have been served in appointment cases.   On March 6, Mr. Fust was appointed co-counsel.   The motion to quash the indictment was filed on March 9—four days after Mr. Schreiber received the formal notice of appointment, and five judicial days

---

[3] In dismissing the appeal from *State* v. *Wilson, supra,* n. 1, the Court stated: "The motion to dismiss is granted and the appeal is dismissed, it appearing that the decision is based upon a nonfederal ground adequate to support it."   320 U. S. 714.

(7 calendar days) after the expiration of the term of the grand jury. The State demurred on the ground that it came too late.

The determination of a single question of fact is decisive in this case: the precise date of appointment of counsel for Michel. It is contended that Mr. Schreiber was not appointed as counsel until March 5, the date of his formal notice; that he was not aware that he was to be chief counsel until after Mr. Fust told him on the 7th of his appointment to "assist" Mr. Schreiber; and that even if he assumed that he was appointed on March 2, he was unfamiliar with the case and thought the week's continuance held open for that period all of petitioner's rights. The record, however, shows without contradiction that Mr. Schreiber was appointed in open court, in the presence of petitioner, on March 2. The trial judge so found and the Supreme Court of Louisiana explicitly upheld this finding. While such findings are not conclusive on this Court, *Rogers* v. *Alabama*, 192 U. S. 226, they are entitled to great weight, *Fay* v. *New York*, 332 U. S. 261, 272. On a question of state practice with which we are unfamiliar, we will not ordinarily overturn the findings of two courts on the mere assertion of counsel that he did not consider himself appointed on the date of record. Since we find that counsel, a lawyer experienced in state criminal practice, had adequate time to file the motion after his appointment, we hold that the application of § 202 in this case was not unreasonable.

*No. 36. Poret and Labat.*—These codefendants were also convicted of rape and sentenced to death. Neither made any attack on the composition of the petit jury, but both filed motions to quash their indictments claiming discrimination in the selection of the grand-jury panel. The facts in each case will be considered separately.

*Poret.*—Shortly after the crime was committed, Poret eluded police officers and fled the State of Louisiana. He

was indicted on December 11, 1950, but he was not arrested and nothing was known of his whereabouts until late 1951 when Louisiana authorities discovered that he was in prison in Tennessee. That State refused to release him until he had served his term. Louisiana filed a detainer against him, and he was returned to New Orleans on October 3, 1952. At his arraignment on October 27, 1952, he was assisted by counsel of his own selection. He pleaded not guilty to the indictment and was granted additional time to file a motion for severance. On November 7, after denial of his motion for severance, he moved—for the first time—to quash the indictment because of systematic exclusion of Negroes from the grand jury. After a hearing at which it was determined that Poret was a fugitive from justice, this motion was denied by the trial court on the ground that it was filed more than a year and a half too late. Under § 202, the time for filing had expired in March 1951, and the trial court held that the provisions of § 202 would not be "suspended or nullified for the benefit of a fugitive from justice who, by his own conduct" was unable to assert his right. The holding was affirmed on this ground by the Supreme Court of Louisiana.

It is beyond question that under the Due Process Clause of the Fourteenth Amendment Louisiana may attach reasonable time limitations to the assertion of federal constitutional rights.[4] More particularly, the State may require prompt assertion of the right to challenge discriminatory practices in the make-up of a grand jury. The problem here is whether such a limitation may be

---

[4] "A state procedural rule which forbids the raising of federal questions at late stages in the case, or by any other than a prescribed method, has been recognized as a valid exercise of state power. The principle is clear enough." *Williams* v. *Georgia*, 349 U. S. 375, 382–383, and cases cited at n. 6. See also *Brown* v. *Allen*, 344 U. S. 443, 486.

avoided by Poret simply on the showing that he was a fugitive from prosecution throughout the entire period provided him.

Petitioner argues that he has had no opportunity to make his challenge to the grand jury, since the time allowed him by § 202 had expired before he was returned to Louisiana. But the record shows that he was not sentenced in Tennessee until five months after that period had expired, and nothing appears to have intervened during this period except his own voluntary flight. Thus Poret's claim is, in effect, that a flight which itself is a violation of federal law, 18 U. S. C. § 1073, is converted into a federal immunity from the operation of a valid state rule. We do not believe that the mere fugitive status existing here excuses a failure to resort to Louisiana's established statutory procedure available to all who wish to assert claimed constitutional rights. This is not to say that the act of fleeing and becoming a fugitive deprives one of federal rights. We hold only that due regard for the fair as well as effective administration of criminal justice gives the State a legitimate interest in requiring reasonable attacks on its inquisitorial process [5] and that the present case is not one in which this interest must bow to essential considerations of fairness to individual defendants.

But it is said that Poret had no lawyer, either before he fled the State or during the 87-day period from his indict-

---

[5] Not only may the prompt determination of such preliminary matters avoid the necessity of a second trial, but a long delay in its determination, such as here, makes it extremely difficult in this class of case for the State to overcome the prima facie claim which may be established by a defendant. Material witnesses and grand jurors may die or leave the jurisdiction, and memories as to intent or specific practices relating to the selection of a particular grand jury may lose their sharpness. Furthermore, a successful attack on a grand jury that sat several years earlier may affect other convictions based on indictments returned by the same grand jury.

ment to the expiration of his time to file under § 202. However, during all of this time he remained a fugitive, and there is no showing that he could not have filed in time had he not elected to flee. In fact, in each of the other cases before us, the court appointed counsel in ample time for those petitioners to raise their claims. We cannot assume that Poret would not have received like treatment if he had been unable to select counsel of his own choice. We, therefore, conclude that Poret, by his own action, failed to avail himself of Louisiana's adequate remedies. "No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right . . . ." *Yakus* v. *United States,* 321 U. S. 414, 444. Even in federal felony cases where, unlike state prosecutions, indictment by a grand jury is a matter of right, this Court has strictly circumscribed the time within which motions addressed to the composition of the grand jury may be made. Fed. Rules Crim. Proc., 12 (b)(3). Likewise the Congress has denied the benefit of such important federal procedural rules as the Statute of Limitations to "any person fleeing from justice." 18 U. S. C. § 3290.

Poret's case affords a perfect illustration of the necessity for prompt determination of claims such as he raises here. Five years have now elapsed since the crime was committed, and the delay has been largely caused by Poret's own actions. Even if available, and memory permitted, the victim and chief witness would be reluctant to retell the sordid story of her unfortunate experience. Poret's conviction by a petit jury whose composition he did not attack has been affirmed by Louisiana's highest court and no constitutional challenge is made here to the fairness of that trial.

Furthermore, it may be added that after being returned to Louisiana on October 3, and employing his personal

lawyer on October 26, Poret still did not file his motion to quash until November 7. At this time he had already been arraigned and had filed other motions which implied a waiver of his objections to the grand jury. Rather than asserting his federal claim at the first opportunity,[6] he delayed the filing of his motion until 12 days after his selection of counsel. This is four times the period we upheld in *Michel*. We, therefore, find no violation of due process in denying this motion as out of time.

*Labat.*—Edgar Labat was Poret's codefendant. He was apprehended the evening of the crime, and implicated Poret. Labat was indicted December 11, 1950, and arraigned on January 3, 1951, and he pleaded not guilty. On January 5 the court appointed Mr. E. I. Mahoney as counsel for petitioner. Thereafter the status of the case remained unchanged for more than a year. The next entry is dated January 29, 1952, when Mr. Mahoney asked leave to withdraw. Mr. Gill was thereafter employed, and on June 12, 1952, moved for a continuance. After a hearing, the motion was granted and the case was again continued. In October the codefendant Poret was returned to the State. Labat filed his motion to quash the indictment on November 7. The term of the grand jury that indicted Labat had expired in March 1951.

Petitioner now contends that he was denied effective representation of counsel. *Powell* v. *Alabama,* 287 U. S. 45. Mr. Mahoney had a reasonable time in which to file his motion to quash, but did not do so. It was stated on oral argument that he was 76 or 77 years old when he took the case, and was ill in bed during several months of the year. The trial court and the Supreme Court of Louisiana held that the facts did not show a lack of effective counsel. As in No. 32, Michel's case, we accept these

---

[6] Cf. *Agnew* v. *United States,* 165 U. S. 36.

findings.   There is little support for the opposite conclusion in the record.   Mr. Mahoney was a well-known criminal lawyer with nearly fifty years' experience at the bar.   There is no evidence of incompetence.[7]   The mere fact that a timely motion to quash was not filed does not overcome the presumption of effectiveness.   *Feeley* v. *Ragen,* 166 F. 2d 976.   The delay might be considered sound trial strategy, particularly since the codefendant could not be found.   We cannot infer lack of effective counsel from this circumstance alone.   Such an inference would vitiate state rules of procedure designed to require preliminary objections to be disposed of before trial.

At argument, petitioners for the first time raised the contention that the requirements of § 202 had been applied by the district attorney only when Negro defendants attempted to attack the composition of the grand jury. They cited two cases in which the district attorney had failed to file demurrers to such motions and the indictments were quashed after the time set out in the statute. The present district attorney, who had been in office some eighteen months but was not serving at the time of these prosecutions, stated that it was his policy to apply § 202 whenever possible.   Petitioners' contention was not raised below, and we do not believe it has been properly put in issue, *Pennsylvania R. Co.* v. *Illinois Buick Co.,* 297 U. S. 447, 463.   If such an allegation had been presented and preserved, and found support in the record,

[7] On the contrary, Mr. Mahoney, since deceased, was recognized as an exceptionally qualified counsel.   On June 1, 1955, the legal profession in New Orleans honored him with a plaque which cited him as "an astute and honored criminal lawyer who has ever been mindful of the oath administered him 52 years ago to uphold the law and to guarantee to each accused his day in court."   As pointed out in the State's brief, whether or not to make an immediate attack on the grand jury was entirely within the discretion of Mr. Mahoney and there were valid reasons for not doing so at the time.

we might have a very different case here.   See *Rogers* v. *Alabama,* 192 U. S. 226.

For the reasons stated the judgments of the Supreme Court of Louisiana are

*Affirmed.*

MR. JUSTICE BLACK, with whom THE CHIEF JUSTICE and MR. JUSTICE DOUGLAS concur, dissenting.

Petitioners, who are colored, were indicted, convicted and sentenced to death in a Louisiana state court.   The grand jury indicting the petitioners was drawn from the parish of Orleans where 32% of the population is colored. Only once within the memory of people living in that parish had a colored person been selected as a grand juror. That juror, who happened to look like a white man, was selected under the mistaken idea that he was one.   The foregoing facts are not disputed here.

Each of the petitioners challenges the validity of the indictment against him on the ground that the failure to have colored people on the grand jury was the result of systematic and deliberate exclusion on account of race. In 1875 Congress made it a crime for state or federal officers to disqualify citizens from grand or petit jury service on account of race or color.   18 Stat. 336, as amended, 18 U. S. C. § 243.   And since the adoption of the Fourteenth Amendment this Court has consistently held that systematic exclusion of Negroes from grand-jury service violates the Federal Constitution.   See *Patton* v. *Mississippi,* 332 U. S. 463, 465–466, and cases there cited.   The Court holds, however, that these petitioners had a reasonable opportunity to challenge the composition of the grand jury indicting them but failed to do so, thereby waiving their constitutional and statutory rights to have the charges against them considered by a fair and legal grand jury.   Without going into the facts of each particular case, I think that the record shows that

there was no such reasonable opportunity afforded to petitioners Michel and Poret or their counsel. I shall add a few words, however, about the supposed opportunity of petitioner Poret to challenge the validity of the indicting grand jury.

The state courts have found that Poret fled from Louisiana after allegedly committing the crime for which he was indicted. But the time allowed Poret by state law to challenge the validity of his grand jury expired long before he was arrested and brought back to Louisiana. It is apparent therefore that after his arrest Poret never had any opportunity at all to challenge the grand jury. It is true that if Poret had not fled and had been arrested and had the benefit of counsel early enough he could have challenged the grand jury's composition. For this reason the Court holds that he forfeited his federally guaranteed right to have his case considered by an unpacked grand jury. I cannot agree that the right to the kind of fair trial guaranteed by the Federal Constitution and congressional enactment can be thus denied by a State. If Poret can be denied this constitutional right, why not others? Could a state statute of limitations like this one declare that anyone under indictment who flees the State has thereby waived his right to counsel or his right to be tried by an unbiased judge? Cf. *In re Murchison,* 349 U. S. 133.

Poret could have been charged with a federal crime under 62 Stat. 755, 18 U. S. C. § 1073, for fleeing from one State to another to avoid prosecution. But he could not have been convicted until after adequate notice and a fair trial on an indictment returned by a fair grand jury selected without regard to race or color. And certainly Congress did not by this statute authorize state courts to forfeit the federally protected rights of an accused because he had violated the federal law against fleeing. I suppose Congress would have no power to do such a

thing. Under our system even a bad man is entitled to have his case considered at every stage by a fair tribunal.

No sound reasons have been advanced supporting the power of a State to use the device here contrived to justify trial of defendants on indictments returned by grand juries in flagrant violation of the Federal Constitution. The arguments advanced by the Court find no substantial support in any of our prior decisions. On the contrary, this Court has strongly asserted the right of defendants to raise defenses permitted others despite their guilt or innocence of charges that are separate and distinct from those upon which they are tried. See *Hovey* v. *Elliott,* 167 U. S. 409. Cf. majority and dissenting opinions in *National Union of Marine Cooks & Stewards* v. *Arnold,* 348 U. S. 37. The Court's opinion here appears to me to give far too little weight to the constitutional and statutory rights of an accused to be indicted and tried by juries selected without racial discrimination.

I would reverse the convictions of Poret and Michel. Since Labat and Poret were jointly indicted by the same unconstitutionally selected grand jury, I would vacate the conviction of Poret's codefendant Labat. See *Ashcraft* v. *Tennessee,* 322 U. S. 143, 155–156, and 327 U. S. 274, 279. Cf. *Malinski* v. *New York,* 324 U. S. 401.

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACK concur, dissenting.

I do not think that petitioners were accorded the opportunity, guaranteed by due process of law, to challenge the constitutionality of the composition of the grand juries that indicted them.

As to Michel, the trial judge found that counsel was appointed on March 2, 1953, three days before the deadline for filing a motion to quash. From the record it is clear that the trial judge believed that he appointed counsel on March 2. But the record contains a sworn statement

by Michel's counsel that he did not consider himself appointed until he received official notice from the court on March 5; and that is what he tells us with great seriousness on oral argument.

The crucial question in this case is not what the trial judge thought, but what the effect of the misunderstanding between him and counsel had upon the constitutional rights of Michel. If counsel on March 2 believed that he was not yet appointed and rendered no service to the petitioner during this critical three-day period, the appointment was not an effective appointment. On this record and on the representations made to us on oral argument, it is clear that Michel had no real opportunity to raise the important constitutional question that might well have saved him from execution. Without counsel, of course, he had no effective opportunity to raise the constitutional question. See *Reece* v. *Georgia, ante,* p. 85. I would not allow any man to go to his death because a misunderstanding between the judge and his lawyer prevented him from getting a hearing on a constitutional question.

Petitioner Poret apparently fled Louisiana shortly after the crime was committed. He was apprehended in Tennessee, but long after the indictment had been returned and the statutory period for filing a motion to quash had expired. The opportunity to raise the constitutional objection, therefore, was foreclosed before he was arraigned and, as far as the record shows, before he had any knowledge that the indictment was pending against him. It's as if the grand jury had been impaneled before the commission of the offense, and the time for raising objections to it expired with the impaneling, as was the case of *Carter* v. *Texas,* 177 U. S. 442, 447. Under these circumstances, Poret had no real opportunity to challenge the constitutionality of the composition of the grand jury. His flight was a wrong that could be punished. But it is dangerous

doctrine to deprive a man of his constitutional rights in one case for his wrongful conduct in another. That is a doctrine that currently is gaining momentum. I disavow it. I would give every accused, regardless of his record, conduct, reputation or beliefs, the full benefit of the constitutional guarantees of due process. Every accused should have the right on his arrest and arraignment to invoke them. Poret goes to his death without ever having had an opportunity to show that the grand jury which indicted him was not drawn in accordance with the mandate of the Fourteenth Amendment.

I would reverse both convictions* and give the defendants an opportunity to come forward with their evidence that the grand juries which indicted them were unconstitutional because of the systematic exclusion of Negroes from the panels.

---

*The conviction of Labat should be vacated because he was jointly indicted with Poret by the same grand jury whose composition is challenged on constitutional grounds. Cf. *Ashcraft* v. *Tennessee,* 322 U. S. 143.