**Henry ESPINOSA, Plaintiff,**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, a Virginia corporation, Defendant.**

**No. 90–CV–71467–DT.**

United States District Court, E.D. Michigan, S.D.

Nov. 15, 1990.

Guy C. Vining, Trenton, Mich., Eric S. Berkely, Detroit, Mich., for plaintiff.

Carson C. Grunewald, Detroit, Mich., for defendant.

## MEMORANDUM OPINION
## AND ORDER

ZATKOFF, District Judge.

## I. INTRODUCTION

Plaintiff filed a claim under the Michigan Handicappers' Civil Rights Act (MHCRA), M.C.L. §§ 37.1101–.1607 (1979),[1] for injuries allegedly suffered as a result of his termination of employment. Plaintiff alleges that defendant wrongfully discharged him because of his epileptic condition. Plaintiff seeks monetary relief.

This matter now comes before the Court on defendant's motion to dismiss. Plaintiff filed a timely response. Both parties have fully briefed the motion; and pursuant to E.D.Mich.Local R. 17(*l*), the Court addresses it without entertaining oral argument.

Upon review of the motion, briefs, and file in this case, the Court finds that (1) plaintiff has averred a "minor" dispute, which must be resolved via the mandatory and exclusive arbitration and grievance procedure of the collective bargaining agreement and the Railway Labor Act (RLA), 45 U.S.C. §§ 151–163, 181–85, 187–88 (1988), and that (2) the RLA preempts plaintiff's MHCRA claim. Therefore, the Court lacks jurisdiction over the subject matter of plaintiff's complaint. Accordingly, the Court grants defendant's motion to dismiss.

## II. FACTS

Defendant hired plaintiff in March of 1977. In August of that year, plaintiff began work as a switchman operator. This employment relationship spawned the current controversy.

On his employment application, dated March 3, 1977, plaintiff indicated that he had never suffered a seizure or unconscious spell. However, medical records obtained by the defendant indicate that plaintiff in fact suffered an epileptic seizure in his mid-teens. In May of 1979, plaintiff was diagnosed an epileptic.

Plaintiff experienced a seizure while at work on August 18, 1987. As a result, Dr. Ford, defendant's medical director, sent plaintiff a notice suspending plaintiff from his job until he received and evaluated medical reports from plaintiff's doctors and determined plaintiff's status. After evaluating the medical records, Dr. Ford determined that plaintiff was incapable of satisfactorily performing his job duties because of the dangers presented by his seizure disorder. Consequently on November 3, 1987, defendant suspended plaintiff from all service.[2] Defendant suspended plaintiff pursuant to the provisions of a collective bargaining agreement in effect between the parties and created pursuant to the RLA. In particular, Article 27 of the collective bargaining agreement, entitled *"Physical Examination—Reexaminations,"* allows defendant (1) to perform medical examinations to determine an employee's physical fitness, and (2) to disqualify unfit employees.

Pursuant to Article 27 of the collective bargaining agreement, plaintiff subsequently challenged the disqualification decision. Article 27 of the collective bargaining agreement details the method for challenging the disqualification decision of defendant's medical director. Essentially, Article 27 provides a medical appeal process following disqualification for physical

---

**1.** The Handicappers' Act, in relevant part, provides:

(1) An employer shall not:

 \* \* \* \* \* \*

(b) Discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position. Mich.Comp.Law § 37.1202 (1979).

**2.** During the course of his evaluation of plaintiff, Dr. Ford learned that plaintiff suffered seizures since the age of 15, that plaintiff experienced two seizures while driving a vehicle, and that plaintiff's seizure at work was "very severe." Dr. Ford further noted that the seizure at work rendered plaintiff unconscious for ten minutes and weakened plaintiff for hours afterward. Plaintiff had never previously revealed this information to defendant.

inability. Under this system, plaintiff was entitled to a re-examination by two doctors, one selected by plaintiff-employee and one by defendant-carrier. The doctors can affirm or reverse the recommendation of defendant's medical director. The unanimous recommendation, whether to affirm or reverse, binds both parties. If, however, the two physicians offer conflicting recommendations, a third doctor is selected to provide a controlling recommendation by which the parties are bound.

In accordance with Article 27, defendant selected a re-examining physician, Dr. Vincent Gallant, who physically examined plaintiff and concluded that plaintiff was unfit for service. Plaintiff selected Dr. Andrew Marcus as his re-examining physician. But nothing in the court record indicates the findings of plaintiff's re-examining physician.[3] By failing to submit a re-examination report, plaintiff failed to pursue his right to re-examination under Article 27.

Rather than pursuing the re-examination option to the fullest extent possible, plaintiff filed a complaint against defendant with the Office of Federal Contract Compliance Programs (OFCCP) under § 503 of the Federal Rehabilitation Act (FRA), 29 U.S.C. §§ 701–796 (1988). The OFCCP investigated the complaint and rejected plaintiff's claim for relief. The OFCCP specifically found that plaintiff could not safely resume work as a switchman operator because of the future likelihood of seizures. Plaintiff did not file for reconsideration of the OFCCP decision. Thereafter, plaintiff filed a complaint in state court. On May 24, 1990, defendant removed this case to federal court.

## III. LEGAL ANALYSIS

### A. Grounds for Defendant's Motion

Defendant challenges both the merits of plaintiff's claim and the Court's jurisdiction. Defendant argues that it is entitled to summary judgment and explicitly bases its motion on Rule 56(c). Defendant also argues that the Court lacks subject matter jurisdiction. However, defendant does not specifically mention Rule 12(b)(1).

 A party must state with particularity the grounds upon which it bases its motion. Fed.R.Civ.P. 7(b)(1); E.D.Mich.Local R. 17(c). Any challenge based on the merits (e.g., a motion for summary judgment) becomes moot if this Court lacks subject matter jurisdiction. *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir.1990) (motion to dismiss for failure to state a claim may be decided only after establishing subject matter jurisdiction, because determination of the validity of the claim is, in itself, an exercise of jurisdiction). 5A C. Wright & Miller, Federal Practice & Procedure § 1350 (1990) (citing *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445 (6th Cir.1988)). Because the Court finds that it lacks jurisdiction in this case,[4] it is unnecessary to consider defendant's request for summary judgment. Accordingly, the Court construes defendant's motion exclusively under Rule 12(b)(1).[5]

---

**3.** In his re-examination report, Dr. Gallant indicated that plaintiff's medical history indicates a visit to Dr. Marcus, plaintiff's re-examining physician, in December of 1987. Dr. Gallant's report also reflects Dr. Marcus' December 1987 recommendation that plaintiff stay off work for a period of time.

Aside from Dr. Gallant's passing reference to Dr. Marcus' advice, this Court can find no other documents reflecting Dr. Marcus' re-examination findings.

**4.** It should be noted that Rule 12(h)(3) empowers the Court to dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter...."

Thus, the Court may on its own initiative dismiss a case if subject matter jurisdiction is lacking. *See, e.g., Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *Ramey Construction Co. v. Apache Tribe of the Mescalero Reservation*, 673 F.2d 315, 318 (10th Cir.1982); *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir.1979); *United States v. Durensky*, 519 F.2d 1024, 1029 (5th Cir.1975); Fed.R.Civ.P. 12(h)(3).

**5.** Pursuant to *Kaschak v. Consolidated Rail Corp.*, 707 F.2d 902 (6th Cir.1983), when an employee bypasses the exclusive remedy provision of the RLA and brings a federal suit involving a minor dispute, a 12(b)(1) motion is the appropriate challenge.

B. *Standard of Review: Subject Matter Jurisdiction*

 To survive a 12(b)(1) motion, the plaintiff bears the burden of proving federal jurisdiction. *Moir*, 895 F.2d 266, 269. The test for determining jurisdiction on the face of the pleadings is whether the federal claim alleged is so patently without merit as to justify the district court's dismissal for want of jurisdiction. *Duke Power Company v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). The court's inquiry is limited to determining whether the challenged pleadings set forth allegations sufficient to show the court that it has subject matter jurisdiction over the matter. *Great Lakes Educational Consultants v. Federal Emergency Management Agency*, 582 F.Supp. 193 (W.D.Mich. 1984). The pleadings are to be construed in a light most favorable to the party opposing the motion. If the pleader alleges facts sufficient to infer that proper subject matter jurisdiction exists, the motion must be denied. *Id.*

C. *The Parties' Contentions*

Plaintiff claims that defendant fired him, in violation of the MHCRA, because he is an epileptic. Also, plaintiff claims that resolution of this case does not require an interpretation of the collective bargaining agreement. Further, plaintiff contends that the RLA and its preemptive effect are simply not at issue in this case.

Defendant argues that for two reasons this Court lacks subject matter jurisdiction over plaintiff's state claim. Defendant's first argument relies on the provisions of the parties' collective bargaining agreement. Defendant asserts that all "minor" disputes between employer and employee are governed by the provisions of the collective bargaining agreement. Defendant argues that because plaintiff's claim is a minor dispute, it must proceed through the mandatory and exclusive grievance and arbitration procedure that the RLA mandates and that the collective bargaining agreement delineates. Defendant argues that as the mandatory and exclusive means of redress, the RLA's grievance and arbitration procedures preclude subject matter jurisdiction in this Court. Defendant's second argument opposing jurisdiction relies on the preemptive effects of the RLA and the FRA.[6] In this respect, defendant argues that even if plaintiff has asserted a state claim, the claim is inextricably intertwined with the meaning and interpretation of the collective bargaining agreement and the RLA. Therefore, defendant argues, the RLA preempts the state claim, thus depriving this Court of jurisdiction. For the reasons stated below, the Court finds that it lacks subject matter jurisdiction over plaintiff's MHCRA claim.

D. *Nature of the Dispute*

The RLA provides the exclusive mechanism for resolving employment disputes that arise out of the meaning or application of the collective bargaining agreement. Under the RLA, an employee submits his dispute to the machinery of a grievance procedure described in the collective bargaining agreement. If the dispute remains unresolved, the employee must submit the dispute to the National Railroad Arbitration Board, or an equivalent Special Board of Adjustment. The RLA explicitly provides that the decision of the Arbitration Board, or its equivalent, is final and binding on both the railroad and the employee. 45 U.S.C. § 153 First (m).

 The Supreme Court determined that disputes arising under the RLA are of two types—"major" or "minor." A "major" dispute involves issues regarding the formation of a collective bargaining agreement before actual formation of such an agreement. A "minor" dispute involves issues regarding the meaning or application of an existing bargaining agreement; a minor dispute refers to a specific employee claim and arises incidentally in the normal course of employment. In other words, with respect to collective bargaining agreements, major disputes involve formative

---

**6.** Because this Court holds that the RLA preempts plaintiff's state claim in this case, it is unnecessary to decide the FRA preemption issue.

questions,[7] and minor disputes involve interpretive questions. *Accord Local 1477 Transp. Union v. Baker*, 482 F.2d 228 (6th Cir.1973) (labor dispute is classified as "minor" if the disputed action of one party can arguably be justified by the existing agreement). After exhaustion of the grievance procedure, usually set forth in the parties' collective bargaining agreement, minor disputes must be submitted to the exclusive jurisdiction of the National Railroad Adjustment Board. 45 U.S.C. § 153 First (i). Parties must employ the compulsory administrative procedures of 45 U.S.C. § 153 First (i)—not the federal courts—to resolve their minor disputes.

■ In the instant case, plaintiff's claim constitutes a minor dispute. The factual and legal bases for the claim against defendant flow from the application of the collective bargaining agreement that governed the terms and conditions of plaintiff's employment. The collective bargaining agreement permits physical exams to determine if employees are fit for continued employment. The agreement allows the workers to challenge the findings of the physical examiner through a review process, thus providing a mechanism for reviewing the implementation of the physical examination and qualification section of the bargaining agreement. At a minimum, defendant's actions can be arguably justified by a plain reading of the collective bargaining agreement; therefore, this case clearly involves a minor dispute within the meaning of the RLA.

After determining that this case involves a minor dispute, there is little room for argument. All minor disputes must proceed through the grievance procedures specified in the collective bargaining agreement; such dispute resolution procedures are mandatory and exclusive. *Andrews v. Louisville & N.R. Co.*, 406 U.S. 320, 322, 92 S.Ct. 1562, 1564, 32 L.Ed.2d 95 (1972). Thus, plaintiff's minor dispute cannot be heard in this Court.

Plaintiff attempts to evade this line of reasoning by suggesting that his claim is an "independent" state cause of action. In this regard, plaintiff claims that this case does not involve major or minor disputes, but rather entails the assertion of a state claim wholly independent of the collective bargaining agreement. Therefore, plaintiff argues, the Court need not consider or refer to the collective bargaining agreement and the RLA in resolving this case. Defendant contends that although plaintiff may have asserted a state cause of action, the RLA compels preemption of plaintiff's state claim. Defendant's contention, based on a clear and cogent presentation of case law, is exactly on point and exposes the futility of plaintiff's "independent state claim" argument.

### E. Preemption Analysis

#### 1. Preemption Policy

■ The term "preemption" generally refers to the judicial doctrine mandating the supremacy of federal legislation over state legislation of identical subject matter. Federal preemption of state statutes is ultimately a question under the supremacy clause of the Federal Constitution. *Philadelphia v. New Jersey*, 430 U.S. 141, 97 S.Ct. 987, 51 L.Ed.2d 224 (1977). To the extent that a conflict exists between state and federal regulation, the latter must prevail. *Pennsylvania R. Co. v. Illinois Brick Co.*, 297 U.S. 447, 56 S.Ct. 556, 80 L.Ed. 796 (1936).

■ Federal preemption cases are usually quite distinctive, in fact idiosyncratic. *See, e.g., Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (preemption analysis under each particular statute is quite distinct); *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941) (the question of whether a state law conflicts with a federal law touching the same subject is not to be determined according to any rigid formula or rule, but depends on

---

7. Additionally, some courts have held that questions involving the modification or alteration of a collective bargaining agreement constitute major disputes under the RLA. *See, e.g., Air Line* *Pilots Ass'n Int'l v. Eastern Air Lines, Inc.*, 869 F.2d 1518 (D.C.Cir.1989); *Alton & Southern Lodge v. Alton & Southern Ry. Co.*, 849 F.2d 1111 (8th Cir.1988).

whether under the particular circumstances of the case, the state law stands as an obstacle to congressional objectives). The factors operating for preemption in one case may militate against preemption in another. Thus, in *Smolarek v. Chrysler Corporation*, 879 F.2d 1326 (en banc) (6th Cir.1989), the court held that § 301 of the Federal Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1988), did not preempt a state claim brought under the MHCRA. However, in another case, one almost indistinguishable from this case, the court held that the RLA did preempt a MHCRA claim. *McCall v. Chesapeake & Ohio Railway Co.*, 844 F.2d 294 (6th Cir. 1988). In those two cases, very different policy concerns compelled differing results.

Despite the varied results, one common policy does unify federal preemption cases: preserving the congressional purpose of the federal statute at issue. In preemption analysis,

> [t]he purpose of Congress is the ultimate touchstone. Where the preemptive effect of federal enactments is not explicit, courts sustain local regulation unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusivity of the states.

*McCall*, 844 F.2d at 299 (citations and quotations omitted). Preemption analysis involves the consideration of whether the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979).

### 2. Controlling Case Law

As noted in defendant's brief, the Sixth Circuit Court of Appeals has recently, very specifically and decisively, held in *McCall v. Chesapeake & Ohio Railway Company*, 844 F.2d 294 (6th Cir.1988), that the RLA preempts the MHCRA. In *McCall*, the court concluded that consideration of the MHCRA claim in the federal district court would have seriously undermined the purpose of the RLA. Congress designed the

RLA to expedite the processing of disputes that plagued the railroad industry and that had the undesirable effect of ultimately interrupting interstate commerce. To this end, Congress allowed labor and management to fashion grievance procedures for resolving disputes. Also, Congress established the National Railway Arbitration Board to handle disputes that could not be resolved through grievance procedures. To hear a MHCRA claim, filed in response to an adverse decision of the grievance and/or arbitration boards, would seriously undermine the efficacy of the congressionally mandated grievance and arbitration procedures. Therefore, in *McCall*, concern for preserving congressional purpose compelled preemption.

In all respects, the operative facts in this case mirror those in *McCall*. In each case, a collective bargaining agreement, formed and executed pursuant to the RLA, governed the terms and conditions of the employment relationship. The collective bargaining agreements contained provisions for evaluating the physical fitness of employees and for disqualifying unfit workers. In both cases, plaintiffs were railroad workers, and lost their jobs because they suffered serious and potentially debilitating disorders that raised serious safety concerns. In *McCall*, the plaintiff was a diabetic; in this case, plaintiff has been diagnosed an epileptic. Based on the indisputable factual and legal similarities between *McCall* and this case, *McCall* is controlling authority in this case.

### 3. Applying McCall

In *McCall v. Chesapeake & Ohio Railway Co.*, 844 F.2d 294 (6th Cir.1988), the plaintiff argued that his handicappers' claim was an "independent state claim," one that neither relied on, nor referred to, the collective bargaining agreement. The *McCall* court rejected such a claim. It fares no better here.

*McCall* holds that if a state claim is based on a matrix of facts that are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the RLA, the state claim is

preempted. 844 F.2d at 301 (citations omitted). Resolution of plaintiff's dispute poses identical analyses under both the RLA and the MHCRA. Pursuant to the RLA and the collective bargaining agreement, the defendant was entitled to make findings and reach a decision as to plaintiff's physical ability to perform his job duties. The fact finder in a MHCRA case would have to decide whether plaintiff's epileptic condition is a handicap that is unrelated to his ability to perform his job duties. Thus, under both the RLA and the MHCRA, the same inquiry will be made—whether plaintiff can physically perform his job duties. Therefore, the state cause of action is preempted because it is based on a matrix of facts that is inextricably intertwined with the bargaining agreement and RLA. The RLA clearly preempts plaintiff's MHCRA claim, notwithstanding plaintiff's "independent state claim" characterization.

From a federal standpoint, this preemption policy and its effect in this case make good sense. Entrusting interpretation of the RLA to a centralized grievance and arbitration procedure promotes uniformity in national labor policy. *McCall,* 844 F.2d at 301. If a plaintiff can litigate an issue on the merits before the grievance board created pursuant to the RLA and a collective bargaining agreement, and then relitigate the identical issue in an independent judicial proceeding, the purposes of the RLA would be frustrated. *McCall,* 844 F.2d at 301.

### 4. Plaintiff's Argument

Plaintiff relies on a trilogy of cases to support his argument that the RLA does not preempt his MHCRA claim. Plaintiff suggests that *McCall* lacks forcefulness in light of *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), *Smolarek v. Chrysler Corp.,* 879 F.2d 1326 (6th Cir.1989), and *O'Shea v. Detroit News,* 887 F.2d 683 (6th Cir.1989)—all three cases decided after *McCall.* The cases that plaintiff cites have much in common with each other, but little in common with *McCall.* In those three cases, it was not necessary to preempt the state claim to preserve the underlying purpose of the federal statute. Those cases, unlike *McCall,* concern the preemptive effect of the LMRA, a statute that is not at issue here and that varies from the RLA in form, substance, and purpose.[8] Thus, the reasoning in those three cases is limited to LMRA preemption and does not shed light on RLA preemption. Therefore, the Court finds that *Lingle,*[9] *Smolarek* and *O'Shea,* though all preemption cases, are neither controlling nor persuasive.

In the wake of *Lingle, Smolarek* and *O'Shea, McCall* has emerged unscathed.

---

**8.** The RLA's dispute resolution procedures serve broad national interests. The procedures attempt to facilitate prompt and orderly settlement of all disputes involving pay rates, rules and working conditions. Also, the RLA attempts to obviate the need for protracted legal disputes regarding the interpretation or application of collective bargaining agreements. Congress sought quick and simple resolution of railroad disputes, thus avoiding labor unrest and facilitating the flow of interstate commerce.

The LMRA does not address such broad national concerns. The LMRA merely provides that "[s]uits for violation of contracts between an employer and labor organization ... may be brought in any district court of the United States." 29 U.S.C. § 185(a) (1982). As noted in *Grote v. Transworld Airlines, Inc.,*

> [T]he LMRA merely creates concurrent state and federal jurisdiction over specified labor disputes. It was not until the Supreme Court's decision in *Teamster's v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) that [the LMRA] was interpreted as

> barring state law claims. Therefore, because the RLA's preemptive force appears on the face of the statute and [the LMRA's] preemption is judicially imposed, we conclude that preemption under the RLA is broader than under the [LMRA].

*Grote v. Transworld Airlines, Inc.,* 905 F.2d 1307 (9th Cir.1990) (citations omitted). Also, in *Beard v. Carrollton Railroad,* 893 F.2d 117 (6th Cir.1989), the court noted that the LMRA lacks the mandatory labor grievance and arbitration procedure, which is the essence of the RLA, and therefore preemption is broader under the RLA. *Beard,* 893 F.2d at 122.

**9.** The Supreme Court decided *Lingle* approximately two weeks after *McCall* was decided. But *Lingle* did not cause the Sixth Circuit Court of Appeals to question its holding in *McCall.* In fact on petition for rehearing, the *McCall* court found *Lingle* "unpersuasive" and rejected it as a basis for granting a rehearing. *McCall,* 844 F.2d at 304. This fact alone should have alerted plaintiff to the frivolity of relying on *Lingle,* and similar cases, to rebut *McCall.*

Applying *McCall*, the Court holds that the RLA preempts plaintiff's MHCRA claim, thus depriving this Court of subject matter jurisdiction. In the instant case, just as in *McCall*, preemption of MHCRA claim best serves the purposes of the RLA.

## IV. CONCLUSION

Plaintiff has averred nothing more than a minor dispute, which must be resolved by employing the mandatory and exclusive grievance and arbitration procedures of the collective bargaining agreement and the RLA. What is more, the RLA preempts plaintiff's MHCRA claim. For these two reasons, the Court lacks subject matter jurisdiction over plaintiff's complaint. Accordingly, the Court HEREBY GRANTS defendant's motion to dismiss plaintiff's complaint.

IT IS SO ORDERED.