DECISION
Defendant-appellant, Shawn E. Carr, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding appellant guilty of one count of murder with a firearm specification.
The charges against appellant arose out of the shooting death of Consuela Mosby early in the morning of February 6, 2000. In addition to the murder count, appellant was charged with one count of having a weapon under disability, based upon his prior conviction for drug possession. Appellant plead guilty to the charge of having a weapon under disability and was tried solely on the murder charge.
Although there were at least four witnesses to the shooting, in addition to appellant, the state was able to present the testimony of only one eyewitness at trial, Stephanie Ayers, the other witnesses having either made themselves unavailable or developed difficulties recalling the events surrounding the shooting. Ayers' testimony generally established that at approximately 4 a.m. appellant had intervened in a fight between the victim and one Sherry Parks, appellant's former girlfriend, and ultimately fired one deliberate shot at the victim as she lay on her side in the snow. Appellant, in contrast, testified at trial that his gun had discharged accidentally when the victim grabbed him from behind after he had intervened to break up the fight.
The jury did not accept appellant's defense of accident and returned a verdict of guilty on the murder count. Appellant was sentenced to a term of fifteen years to life, with an additional term of three years on the firearm specification, and twelve months on the count of having a weapon under disability.
Appellant has timely appealed and brings the following assignments of error:
First Assignment of Error
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT FOR MURDER WHEN THE EVIDENCE WAS NOT SUFFICIENT TO SUSTAIN IT AND THE MANIFEST WEIGHT OF THE EVIDENCE WOULD NOT SUPPORT IT.
Second Assignment of Error
 THE TRIAL COURT COMMITTED PLAIN ERROR IN FAILING TO INSTRUCT THE JURY ON INVOLUNTARY MANSLAUGHTER.
Third Assignment of Error
 THE APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO COUNSEL WHEN HIS TRIAL COUSEL FAILED TO REQUEST THAT THE TRIAL COURT INSTRUCT THE JURY ON INVOLUNTARY MANSLAUGHTER.
Appellant's first assignment of error asserts that the judgment convicting appellant of murder is not supported by sufficient evidence and is against the manifest weight of the evidence. The Ohio Supreme Court in State v. Thompkins (1997), 78 Ohio St.3d 380, set forth the following standard for a court addressing an appeal from a criminal conviction based upon a claim that the verdict is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
Id. at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. When reviewing a conviction on manifest weight of the evidence, we do not construe the evidence most strongly in favor of the state. Instead, we must engage in a limited weighing of the evidence to determine whether there is sufficient, competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported.
In contrast, the legal concept of sufficiency of the evidence to support a conviction involves a different determination. Thompkins, supra, at 386. "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Id., quoting Black's Law Dictionary (6 Ed. 1990) 1433. Thus, a determination as to whether the evidence is legally sufficient to sustain the verdict is a question of law. Thompkins, at 386. The relevant inquiry upon a review of the sufficiency of the evidence is whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia (1979), 99 S.Ct. 2781, 2789. A reversal based on insufficient evidence has the same effect as a not guilty verdict, and thus precludes retrial, because such a determination "means that no rational factfinder could have voted to convict the defendant." Tibbs v. Florida (1982), 102 S.Ct. 2211, 2218.
In the present case, we find that the evidence presented at trial was sufficient to support appellant's conviction, and such a conviction was not against the manifest weight of the evidence presented. A review of the testimony presented under the manifest weight standard, with limited reweighing of the evidence, is also dispositive of the more strict sufficiency standard set forth above, which requires us to view the evidence in a light most favorable to the prosecution.
As stated above, appellant's conviction was based essentially upon the testimony of a single eyewitness, Stephanie Ayers, with corroborative but less important testimony by investigating police officers and the forensic pathologist who performed the autopsy on the victim. Ayers testified that she had moved in with the victim, Consuela Mosby, a few weeks before the shooting. Due to conflicts with her parents, Ayers had been staying with Mosby intermittently prior to that, but had only recently formally moved in. Ayers described Mosby as well-known in the apartment complex for her generosity in letting friends and neighbors use the telephone, stay overnight when they had domestic difficulties, or share a meal when needed. However, Ayers described Mosby's difficulties with crack cocaine and occasionally alcohol, which had caused conflicts with Mosby's new boyfriend, Andre Witherspoon.
On the night of the shooting, which Ayers described as bitterly cold and snowy, Ayers had been "in and out" of Mosby's apartment all evening socializing outdoors and at other friend's houses. Ayers stated that she had smoked marijuana around 5 or 6 p.m. on the night in question, but by the later stages of the evening was unaffected and sober.
Late in the evening, Ayers, Mosby, Witherspoon, and Ayers' friend Robert Stein, who lived in the neighborhood, were watching television in the apartment. Around 1 a.m., Mosby suggested going for a walk and Ayers accompanied her. Mosby stopped at an apartment and went upstairs, leaving Ayers to wait outside. Ayers presumed, based on past experiences, that the purpose of this stop was for Mosby to smoke crack cocaine. After they returned to the apartment, Mosby, Ayers and Witherspoon undressed and prepared for bed while Stein continued to watch television on the couch. At this time, Sherry Parks, whom Ayers knew only as "Mahogany," knocked on the door and asked to see Mosby. After a brief conversation in the hallway, Mosby reentered the apartment and began to dress again stating that she was going to go out and get into a fight. Stein, Ayers and Witherspoon decided to follow Mosby out and assess the situation. Ayers was not particularly surprised or concerned because Mosby did not avoid physical confrontations and was large enough, being 5'9" and sturdily built, to defend herself even against men on occasion. Ayers was unaware of the reason for the fight, other than Parks accused Mosby of "telling lies" about Parks' boyfriend.
Ayers, in the company of Stein and Witherspoon, observed for some fifteen or twenty minutes while Mosby and Parks argued and screamed at each other without actually coming to blows. Ayers' recollection was that, near the end of this verbal phase of the confrontation, appellant, whom Ayers believed to be dating Sherry Parks but knew only as "S.K.," appeared on the scene without intervening. Ayers described appellant as an acquaintance, someone she was not especially friendly with but had seen many times around the neighborhood.
At this point, Mosby declared that, having been called out to fight, she was tired of arguing and would go inside unless Parks carried through on her intention to fight. The two women almost immediately came to blows and rolled around in the snow. Initially, Parks had the upper hand and appellant, while not particularly encouraging her, did not intervene. Eventually, however, Mosby gained the advantage and achieved a position straddling Parks, punching Parks repeatedly in the face. Appellant then intervened, stepping forward and striking Mosby in the back of the head. At that point, Ayers, Witherspoon, and Stein, who had considered the situation a "fair fight," also stepped forward, Witherspoon coming the closest to appellant. Appellant produced a handgun, pointed it at the trio, and fired a shot above their heads, striking the building behind them. According to Ayers, at no time had Ayers, Stein, or Witherspoon approached near enough to touch appellant, and when he fired the shot, they all stopped and Witherspoon took a step back.
Nearly simultaneously with firing the shot over Ayers' group, appellant had grabbed Mosby by the hair and thrown her off of Parks. After an appreciable interval, while Mosby was still lying on her side and raising herself to her elbow, appellant fired a second shot from his handgun directly at her and she fell backwards. Ayers variously described the interval of the two shots as two or three seconds to ten to fifteen seconds. At the time he fired the shot at Mosby, appellant's arm was extended towards her and the gun was clearly visible with his arm extending away from his body, and some distance between the end of the gun and Mosby. After firing the single shot at Mosby, appellant turned and walked away from the scene with Parks without saying a word.
Doctor Keith Norton, of the Franklin County Corner's office, described the results of his autopsy. He stated that the victim died as a result of a single gunshot wound which had entered her right shoulder and pierced two major arteries and a lung, coming to rest just inside the skin of the lower left back. He estimated death as occurring within two minutes. Toxicology results indicated the presence of alcohol at a concentration of .27, nearly three times the legal limit, as well as cocaine and cocaine metabolites.
Appellant's testimony at trial conceded that he was present at the scene and fired the shot which caused Mosby's death, but appellant asserted that the shooting was the result of an accident. Appellant testified that at the time in question, he was no longer dating Parks and had moved in with a new girlfriend in the area. When he heard that Parks and Mosby had confronted each other outside, he went outside to attempt to prevent Parks from starting trouble. Soon after he arrived on the scene he observed the two women begin to fight. When Mosby clearly began to prevail, appellant intervened only because he believed the fight to be over for all practical purposes. As appellant reached towards Mosby, he saw Witherspoon approaching him and believed that Witherspoon had a knife in his hand. Appellant then drew his .38 Special revolver with his right hand, held it at his side, and then seeing Witherspoon continue to advance, pointed the gun and drew the hammer back. At this point, Mosby grabbed appellant from behind and the gun discharged accidentally. Appellant was spun around by Mosby and struggled with her. As Mosby tripped and fell backwards the gun discharged again. Parks then grabbed appellant and insisted that they leave the scene; appellant, shocked and confused by the situation, left with Parks and later gave her the gun. The gun was never located.
Upon appeal, appellant asserts that his version of events should have been given credence by the jury, because counsel at trial "sufficiently impeached" Ayers' testimony by means of prior inconsistent statements. At trial, counsel for appellant elicited from an investigating police investigator, homicide Detective Huston, testimony regarding Ayers' version of events given to Detective Huston when interviewed immediately after the shooting. At that time, Ayers had stated that Mosby, kneeling astride Parks, fell to the ground when struck by appellant and seemed to be lying unconscious prior to being shot by appellant. Another prior statement by Ayers, given to homicide Detective Kathie Clark, indicated that appellant had arrived at the scene after the two women began fighting. These details from Ayers' statements given immediately after the shooting thus differed from her trial testimony, in which she had stated that the victim was lying on her side, raising herself to her elbow at the time she was shot, and that appellant had arrived sometime prior to the women actually beginning to fight.
Giving due deference to the trier of facts' superior ability to observe the demeanor, mannerisms, and inflections of a witness in assessing credibility, State v. DeHass (1967), 10 Ohio St.2d 230, these relatively minor inconsistencies brought out by appellant's counsel at trial simply fall far short of what would be necessary to find that the verdict was against the manifest weight of the evidence. Ayers' testimony was for the most part clear, coherent, and definite. The minor inconsistencies cited by appellant do not provide a basis for concluding that the jury was required to utterly discount Ayers' testimony and adopt instead appellant's version of events. Ayers unequivocally testified that appellant extended his arm and deliberately fired a shot at the victim who was lying on her side, raised up on her elbow, in an attitude and at a distance at which she posed absolutely no immediate physical threat to appellant. The jury was entitled to accept this testimony as credible, and to conclude from it that the state had met its burden of establishing the elements of murder.
We accordingly find that the record before us does not support the pro-position that the jury clearly lost its way in resolving conflicts in the evidence and created such a manifest miscarriage of justice that a new trial must be ordered. We also conclude that the record contains sufficient, competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Appellant's conviction was therefore neither against the manifest weight of the evidence, nor unsupported by sufficient evidence as a matter of law. Appellant's first assignment of error is therefore overruled.
Appellant's second assignment of error asserts that the trial court committed plain error when it failed to instruct the jury on the lesser included offense of involuntary manslaughter. Such an instruction was not requested by trial counsel, which forms the basis for appellant's third assignment of error discussed infra.
The offense of murder is defined under Ohio law as purposely causing the death of another. R.C. 2903.02(A). The offense of involuntary manslaughter is defined as causing the "death of another as a proximate result of the offender's committing or attempting to commit a felony or misdemeanor." R.C. 2903.04(A). Involuntary man-slaughter is a lesser included offense of murder. State v. Rohdes (1986), 23 Ohio St.3d 225,227.
A charge on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the greater offense charged and a conviction upon the lesser included offense. State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus. If the evidence presented at trial meets the test with regard to the lesser included offense, the trial court must instruct the jury on the lesser offense. State v. Loudermill (1965), 2 Ohio St.2d 79. However, when a defendant fails to request a given jury instruction, or object to the absence thereof, the trial court's failure to give such an instruction will be reviewed under the plain error standard. "A jury instruction violative of R.C. 2901.05(A) does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraphs two and three of the syllabus.
While appellant argues that the jury could have convicted him of the offense of involuntary manslaughter, based upon his accidental shooting of the victim while committing the crimes of carrying a weapon under disability or aggravated menacing, the mere possibility that the jury might have reached a different conclusion is not sufficient to sustain the plain error standard. The record simply does not support the proposition that, given the opportunity to convict appellant of involuntary manslaughter, the jury would have done so in preference to finding him guilty of murder. The facts as set forth above do not support that this would necessarily have been the outcome of trial, in light of the jury's rejection of appellant's defense of accident. We therefore find that the trial court's failure to instruct the jury on the lesser-included offense of involuntary manslaughter did not constitute plain error. Appellant's second assignment of error is therefore overruled.
Appellant's third assignment of error asserts that he was denied his constitutional right to effective assistance of counsel at trial. In order to establish a claim of ineffective assistance of counsel, a criminal defendant must first demonstrate that counsel's performance was so deficient that it was unreasonable under prevailing professional norms. Strickland v. Washington (1984), 466 U.S. 668, 687-688. Appellant must then show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, quoting Michel v. Louisiana (1955), 350 U.S. 91, 101.
Appellant's claim of ineffective assistance of trial counsel is based upon trial counsel's failure to request an instruction on the lesser-included offense of involuntary manslaughter. In order to meet the above-outlined standard to establish ineffective assistance of trial counsel, appellant must show both that the failure to request the instruction constitutes an unprofessional error on the part of counsel, and in the absence of such error there is a reasonable probability that the outcome of the trial would have been different. Since a properly licensed attorney is presumed competent, appellant bears the burden of showing the above elements. State v. Hamblin (1988), 37 Ohio St.3d 153,155. We find that appellant has not, on appeal, demonstrated that trial counsel's strategic choice not to request an instruction on the lesser-included offense was not sound trial strategy. The Ohio Supreme Court has held that failure of trial counsel to request jury instructions on lesser-included offenses is largely a matter of trial strategy and will not establish per se ineffective assistance of counsel. State v. Griffie (1996), 74 Ohio St.3d 332, 333. In the present case, in order for the jury to acquit appellant on the murder charge, the jurors would necessarily have been required to give credence to appellant's account of the shooting as accidental, and have completely disregarded Ayers' testimony establishing the deliberate nature of appellant's act. Addition of the instruction on the lesser-included offense would have provided no additional exculpatory avenue of reasoning for the jury to follow, and would in all probability not have affected the jury's willingness to give credence to Ayers' testimony. Since the prosecution did not request the instruction on the lesser-included offense, the fruits of an acquittal on the murder charge were proportionately greater, and the risk of conviction not demonstrably increased. We therefore find that counsel's strategy of not requesting the jury instruction on the lesser-included offense of involuntary manslaughter was suited to the factual context of the trial and the overall strategy of the defense, and did not constitute either an unprofessional error, or effect any demonstrably prejudicial impact on the outcome of the proceedings for appellant.
We accordingly find that appellant has not met the Strickland test to demonstrate ineffective assistance of trial counsel. Appellant's third assignment of error is therefore overruled.
In summary, appellant's first, second, and third assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas finding appellant guilty of murder is affirmed.
 _______________ DESHLER, J.
BROWN and PETREE, JJ., concur.