[Cite as *State v. Sanders*, 2013-Ohio-789.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 2012CA00042 |
| JOHN I. SANDERS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Case No. 2011CR1297


JUDGMENT:                    AFFIRMED


DATE OF JUDGMENT ENTRY:      February 19, 2013


APPEARANCES:

For Appellant:                       For Appellee:

GEORGE URBAN                         JOHN D. FERRERO, JR.
116 Cleveland Ave. NW, Suite 808     STARK COUNTY PROSECUTOR
Canton, OH 44702                     KATHLEEN O. TATARSKY
                                     110 Central Plaza South, Suite 510
                                     Canton, OH 44702-1413

*Delaney, J.*

{¶1}   Appellant John I. Sanders appeals the February 7, 2012 judgment entry of the Stark County Court of Common Pleas convicting and sentencing him upon one count of murder and with a repeat violent offender specification.

### FACTS AND PROCEDURAL HISTORY

{¶2}   This case arose in the early morning hours of August 25, 2011 at the Orchard View Apartments located at 707 5th Street NE, Canton, better known as "the Ranch."   The Ranch has three floors, consisting of 48 apartment units; most units consist of one room and each floor has shared common bathrooms.   Managers of the Ranch testified that loud, belligerent arguments during the night are not uncommon among the tenants.

{¶3}   The following testimony was adduced at trial.

### Melee and Assault at the Ranch

{¶4}   Around midnight on August 25, 2011, Robert "Leo" Linkus ("Linkus") and his girlfriend Barb Fisher ("Barb"), both tenants of the Ranch, were drinking and arguing on the back deck that faces Sixth Street Northeast.   Both were intoxicated and their loud argument attracted the attention of a number of residents.

{¶5}   Aaron Fisher ("Aaron") is Barb's son and a former tenant of the Ranch. His friend, Mark Mason ("Mason"), was also a former tenant.   Aaron had been evicted and was no longer permitted inside the building.   Aaron and Mason observed the argument between Linkus and Barb and were angry because Linkus allegedly pushed Barb.

{¶6} John Perault is another tenant of the Ranch and was on the deck with Linkus and Barb during the argument. Perault observed Aaron and Mason walk up toward the building from the sidewalk and saw them talking to the pair.

{¶7} Molly and Kevin Elbert are a married couple who work as live-in managers of the Ranch. Around midnight, they heard a loud disturbance at the back door of the building with tenants yelling and screaming. The Elberts went into the hall and saw Linkus attempting to enter the building through the back door from the deck with Aaron and Mason following closely behind him. Molly told Aaron and Mason they could not come in and that the police were on their way. Mason said "I don't f***ing care if the cops are coming," but Molly testified his manner was not threatening or aggressive.

{¶8} Aaron and Mason turned around and walked away from the building, but only went a short distance down the sidewalk.

{¶9} Linkus and Barb resumed their argument and the Elberts continued their efforts to calm them down. A number of residents watched from windows or from the deck itself.

{¶10} In the meantime, appellant was in his apartment playing a video game with his live-in girlfriend, Viola France. They heard the commotion and went out to investigate but returned to their apartment. The noise resumed, and this time appellant left the apartment with a baseball bat.

{¶11} A number of witnesses testified that Mason was mounting the stairs to the deck with his hand on the rail when appellant came out of the back door and struck him on the head with the baseball bat. The assault happened very quickly.

The Elberts were breaking up the fight between Barb and Linkus and didn't see the assault take place. Perault saw appellant swing the bat and strike Mason on the top of his head.

{¶12} In the aftermath of the assault, Mason lay on the sidewalk. Molly Elbert tapped him on the shoulder with no response; she could see his head was wounded.

{¶13} Perault stated that after striking Mason, appellant immediately went back into the building. A number of witnesses saw appellant and France flee from the building in appellant's truck, so quickly that they spun gravel as they pulled out.

*Victim Eventually Succumbs to Significant Head Injury*

{¶14} Paramedics and police arrived at the scene. Paramedics noted a deep, head wound approximately 6 centimeters wide. Mason was nonresponsive and taken to Aultman Hospital. He eventually was moved to a nursing home.

{¶15} Mason never recovered consciousness and lingered in a coma for over three months. During that time, his physical condition deteriorated and he eventually succumbed to his injuries.

{¶16} Stark County Deputy Coroner Dr. Orlino performed an autopsy on Mason and described a large defect to the right side of his cranium which created a subdural hematoma, or hemorrhage in his brain, which required surgical intervention to lessen the pressure in Mason's skull. Orlino explained that in the three months he lingered before his death, Mason was in a vegetative state. The cause of his death was complications of blunt trauma to the head by means of a baseball bat; the coroner's ruling was death by homicide. Orlino also noted that upon admittance to the hospital on August 25, Mason had a blood alcohol level of 0.159.

*Appellant's Actions after the Assault*

{¶17} Meanwhile, immediately after striking Mason in the head with the bat, appellant quickly went back into the building. Viola France testified that appellant returned to their apartment with the baseball bat and told her to get her things because they were leaving. He asked her if she heard a "whomping sound" and she said no. The pair left the apartment in a hurry and went to two grocery stores. They returned to the building after the police left, but did not park in the parking lot; instead they parked in the grass underneath the window of their apartment.

{¶18} Appellant came into the Elberts' office several times after the police were gone and made "strange comments," telling the Elberts they didn't see anything, no one saw him with a bat, and he didn't strike anyone with a bat.

{¶19} The day after the assault, appellant told Linkus to tell the police he didn't see anything. Appellant and France went to PSC Metals, a scrap metal dealer, to drop off scrap they had accumulated. Appellant discarded the bat in a dumpster at PSC. Upon their return to the Ranch, appellant again parked his truck below their apartment window and began lowering their belongings into the truck.

*The Investigation*

{¶20} Detective Jerry Fuelling investigated the assault on Mason. Upon interviewing the witnesses, he identified appellant as the suspect. Fuelling spoke to France and she revealed the location of the bat, which was recovered from the PSC Metals dumpster.

{¶21} Fuelling obtained a statement from appellant. He claimed he was in his apartment with France when he heard the disturbance outside. He said he initially

grabbed a baseball bat and went out to investigate, but the two males who were causing a problem had left. Appellant claimed he returned to his apartment, heard the arguing start again, and went back out to check, this time without the bat. Appellant claimed Mason came up the steps toward him in an aggressive manner. He said one of Mason's hands was on the rail but he believed Mason had something in his other hand. Appellant claimed he struck Mason with his fist and Mason stumbled on the step but caught himself. Appellant then returned to his apartment and left with France.

{¶22} A criminalist from the Stark County Crime Lab examined the bat and discovered Mason's DNA on its barrel.

*Indictment, Trial, and Sentencing*

{¶23} Appellant was charged by indictment with one count of felonious assault pursuant to R.C. 2903.11(A)(1) and (A)(2) with a repeat violent offender specification pursuant to R.C. 2941.149. Upon the death of the victim, appellant was re-indicted by superseding indictment for one count of murder pursuant to R.C. 2903.02(B) with a repeat violent offender specification and one count of felonious assault pursuant to R.C. 2903.11(A)(1) and/or (A)(2), also with a repeat violent offender specification.

{¶24} The case proceeded to jury trial. Appellee dismissed Count Two, felonious assault, and the repeat violent offender specification was tried to the court. Appellant was found guilty as charged and was sentenced to an aggregate prison term of 25 years to life.

{¶25} Appellant appeals from the judgment entry of conviction and sentence.

{¶26} Appellant raises two Assignments of Error:

{¶27} "I.   WHETHER APPELLANT'S CONVICTIONS WAS (*sic*) AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE?"

{¶28} "II.   WHETHER APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE?"

I.

{¶29} In his first assignment of error, appellant argues his murder conviction is not supported by sufficient evidence and is against the manifest weight of the evidence.  We disagree.

{¶30} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.  The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶31} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶32} Appellant was convicted of one count of murder[1] pursuant to R.C. 2903.02 (B), which states: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." The underlying offense in this case is felonious assault, R.C. 2903.11(A)(1) and/or (A)(2), which state in pertinent part, "No person shall knowingly do either of the following: [c]ause serious physical harm to another or to another's unborn; [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶33} Appellant's argument goes entirely to the credibility of state's witnesses. He notes the testimony of the eyewitnesses was contradictory in its details and that several of the witnesses had motive to lie or were admittedly intoxicated when they witnessed the assault. The weight of the evidence and the credibility of the witnesses,

---

[1] Appellant does not challenge the trial court's finding that he is a repeat violent offender, other than to assert the specification must fail if the underlying conviction is reversed.

though, are determined by the trier of fact.  *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216.  Moreover, the minor contradictions appellant points out pale in comparison to the overwhelming evidence that appellant struck Mason with the bat, returned to his apartment, disposed of the bat at PSC Metals, and later admitted striking Mason (albeit with his fist).

{¶34} We have thoroughly reviewed the record and find appellee presented overwhelming evidence in support of appellant's guilt.  His murder conviction is not against the manifest weight of the evidence and is supported by sufficient evidence.

{¶35} Appellant's first assignment of error is overruled.

II.

{¶36} In his second assignment of error, appellant argues defense trial counsel was ineffective in failing to demonstrate appellant's "poor relationship" with manager and witness Kevin Elbert, based upon Elbert's alleged conviction for gross sexual imposition and alleged status as a sexual predator.  We disagree.

{¶37} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).  "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not

defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶38} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶39} First, we note neither party has directed us to the alleged conviction of Kevin Elbert in the record of this case. A direct appeal is not the appropriate forum in which to challenge a matter that is not in the record. *State v. Portillo*, 5th Dist. No. 2010 AP 01 0002, 2011-Ohio-52, at ¶ 58.

{¶40} Assuming *arguendo* Elbert does have a 1995 conviction for gross sexual imposition, trial counsel's failure to raise this matter was not ineffective. As appellee points out, evidence of a witness' conviction for a crime which is more than 10 years old is prohibited by Evid.R. 609(B). Appellant makes no argument to establish this evidence would have been admissible.

{¶41} Moreover, even if we assume trial counsel was deficient in not raising the matter of the conviction and attempting to introduce it at trial to discredit Elbert, we find appellant failed to show counsel's alleged error resulted in prejudice. Appellant makes no showing that even if Elbert's credibility had been put at issue, the result of the proceeding would have been any different. Elbert was not a linchpin witness. The overwhelming evidence of appellant's guilt is such that any alleged bias on the part of

a single witness, who did not even claim to have seen the assault, would not have resulted in a different outcome at trial.

{¶42} We find appellant did not receive ineffective assistance of counsel and his second assignment of error is overruled.

{¶43} Having overruled both of appellant's assignments of error, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, P.J.

Gwin, J. and

Wise, J. concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

PAD:kgb

[Cite as *State v. Sanders*, 2013-Ohio-789.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JOHN I. SANDERS | : | |
| | : | |
| | : | Case No. 2012CA00042 |
| Defendant-Appellant | : | |

    For the reasons stated in our accompanying Opinion on file, the judgment of the

Stark County Court of Common Pleas is affirmed.  Costs assessed to Appellant.


_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE