UNITED STATES of America, Plaintiff,

v.

Darlene FRAPPIER, Defendant.

Crim. No. 85–99–C.

United States District Court,
D. Massachusetts.

July 31, 1985.

Owen Walker, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a criminal case in which defendant, Darlene Frappier, a/k/a Darlene Boissoneault, has been indicted pursuant to 18 U.S.C. §§ 1111 and 2 for the murder of her then husband, Sgt. Robert A. Boissonneault. The case is now before this Court on defendant's motion to suppress statements which she made at her detention hearing on March 28, 1985. The motion to suppress was filed by Owen Walker, Esq. the Federal Defender who is successor counsel to her original lawyer, Raymond C. Malloy. Defendant alleges that her testimony at that hearing resulted from ineffective assistance of counsel and thus, was procured in violation of her Sixth Amendment rights. A suppression hearing on this matter was held on June 17, 18 and 27, 1985.

According to the evidence presented to this Court, defendant was represented at her detention hearing by Raymond C. Malloy, Esq. from Methuen, Massachusetts. A friend of defendant's had previously contacted Stephen Struffolino, a senior member of Mr. Malloy's firm, to arrange for defendant's representation. Thereafter, Mr. Struffolino asked Mr. Malloy to interview defendant and to arrange for her bail. Mr. Malloy first met with defendant on the evening of March 25, 1985, immediately after her arraignment. This meeting, which took place in the U.S. Marshal's office, lasted about ten minutes. Mr. Malloy then had another brief conversation with defendant on the morning of March 28, shortly before her detention hearing. During each of these meetings, Mr. Malloy

tried to learn as much as possible about his client's background; he asked her very little about the specific facts of the murder case.

While Mr. Malloy and the defendant were in the courtroom waiting for the detention hearing to begin, the prosecuting attorney handed Mr. Malloy the reports of several statements which defendant had given to government agents during the investigation of the case. Mr. Malloy was only able to glance at these reports before the detention proceeding got underway.

At the hearing, the government called FBI Special Agent Thomas Terhaar, who described not only the case against defendant with respect to the murder of Sgt. Boisseneault, but also defendant's alleged involvement in the 1977 shooting of another of her former husbands. Mr. Malloy thought that the agent's version of what had happened "was a pretty powerful story," and therefore concluded that there was no hope of getting defendant out on bail unless she herself took the stand and attempted to rebut the agent's testimony as to the substance of the charge. Mr. Malloy believed the few statements defendant had made to him regarding the facts of the case and felt she would be a credible witness. He thought that if the Magistrate believed her version of the facts, the Magistrate might release her on bail.

Mr. Malloy expressed his thoughts to defendant and asked her if she could relate the same facts on the stand that she had told him in their two conversations prior to the detention hearing. She said she could, and she agreed to testify. Mr. Malloy also told her that he thought testifying would be "dangerous" because "they" would ask her questions, but he did not specifically explain to her what he meant by these statements. After putting defendant on the stand, Mr. Malloy questioned her only briefly, but the prosecutor cross examined her extensively about her alleged involvement in both the murder of Sgt. Boissoneault and the shooting of Robert Veinot in 1977. It is this testimony which defendant now seeks to suppress.

Under the Sixth Amendment, a criminal defendant is constitutionally entitled to receive assistance of counsel which is reasonably competent in light of both prevailing professional norms and the circumstances of the particular case. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In evaluating a claim of ineffective assistance of counsel, a court must show special deference for counsel's professional judgment. Because a decision to have a defendant testify at any stage of a criminal proceeding is an extremely sensitive one, "defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound ... strategy.'" *Id.* at ——, 104 S.Ct. at 2066, quoting *Michel v. New York*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955).

Despite the great weight of defendant's burden, I find that Mrs. Frappier has succeeded in proving that Mr. Malloy failed to exercise reasonable professional judgment when he advised defendant to take the stand at the detention hearing. At the time of the hearing, Mr. Malloy had not properly acquainted himself with either the law governing the proceeding or the facts surrounding his client's case. Mr. Malloy was unaware of the option available to him under the Bail Reform Act of 1984, which permits an attorney to present a defendant's testimony by proffer at a detention hearing, 18 U.S.C. § 3142(f), thereby eliminating the need for a defendant to incur the risks of cross-examination. Although Mr. Malloy understood the seriousness of the charge which defendant was facing, he spent a total of only twenty minutes talking with her before the bail hearing, and he devoted less than half of that time to investigating the facts of the case. When Mr. Malloy called his client to the stand in the hope that the Magistrate would believe her testimony concerning the substance of the charge, Mr. Malloy had no more than "skimmed" her previous statements to law enforcement agents, and he was regretfully unaware that her indictment was the result of a comprehensive two-year FBI

investigation. Furthermore, he did not know that the government's attorney had already successfully prosecuted another defendant in the case, and was therefore likely to be a knowledgeable and formidable adversary.

Not only did Mr. Malloy fail to investigate adequately the facts and posture of his client's case, but he also failed to provide Mrs. Frappier with sufficient information on which to base an intelligent decision about whether to testify. He explained to her neither her constitutional right to remain silent nor the potential consequences of waiving her privilege against self-incrimination. He also failed to describe to her the manner in which witnesses may be examined in an adversarial proceeding and to prepare her for the various inquiries which were likely to be made of her on direct and cross-examination. See R. Keeton, *Trial Tactics and Methods* 34–40 (1973).

At the hearing on defendant's motion to suppress counsel for defendant proffered as expert witnesses, Rikki Klieman, Esq., and John Prescott, Esq. Ms. Klieman is a practicing attorney whose experience in criminal law consists of 4½ years in a state prosecutor's office and approximately 5 years in private practice in both state and federal courts in this district and elsewhere. Ms. Klieman has appeared for defendants in approximately 35 criminal murder cases and has lectured as an expert in the area of criminal defense practice. Mr. Prescott is the supervising attorney for the Committee for Public Counsel formerly known as the Mass. Defenders. Mr. Prescott has been practicing criminal law for approximately 20 years both as the First Assistant District Attorney for Norfolk County and as a public defender. The Court declined to take expert testimony from these two well-qualified lawyers because it was not satisfied that their testimony met the requirements of Rule 702 of the Federal Rules of Evidence which states in pertinent part: "[I]f (expert testimony) ... will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified ... may testify...." This court felt that 24 years experience on this court coupled with six years in the office of the United States Attorney made such assistance academic and unnecessary. Nevertheless this Court is prepared to believe the truthfulness of the proffered testimony as to Ms. Klieman's testimony, namely, that she has never put a defendant on the stand at a bail hearing and would never do so because the risk far outweighs the possible benefits from so doing. I also treat as factual the proffered testimony that Ms. Klieman would withdraw as counsel for a defendant rather than allow a defendant to take the witness stand at a bail hearing. I further treat as factual the proffered testimony of Mr. Prescott, who has handled approximately 1,000 bail hearings, that he has never put a defendant on the witness stand at a bail hearing, and that he would withdraw if he could not persuade a defendant-client to stay off the witness stand. I summarize these proffered statements to the extent they bear on the reasonableness or unreasonableness of the conduct adopted by Mr. Malloy.

For all of the reasons stated above, I find and rule that Mr. Malloy's conduct in connection with his representation of defendant at her detention hearing fell short of reasonable professional standards and constituted a violation of defendant's Sixth Amendment right to counsel. After reviewing the transcript of defendant's testimony at the bail hearing, I further find that such testimony may prove prejudicial to her defense, *see Strickland v. Washington,* 466 U.S. ——, 104 S.Ct. at 2065, and I therefore rule that her testimony at the detention hearing on March 28, 1985 should be suppressed as to their use in the government's case in chief. *See United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed. 564 (1981).

Order accordingly.