956 F.2d 1167
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Trevor John PAGINTON, Petitioner-Appellant,
v.
Manfred MAASS, Superintendent, Oregon State Penitentiary,
Respondent-Appellee.
 No. 91-35641.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 6, 1992.*
Decided March 10, 1992.
 
 Before CYNTHIA HOLCOMB HALL, O'SCANNLAIN and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Trevor Paginton, an Oregon state prisoner, appeals the district court's denial of his habeas petition challenging his conviction by a plea of no contest for attempted murder. We have jurisdiction under 28 U.S.C. § 2253 and we affirm.
 
 I. Intelligent and Voluntary
 
 3
 Paginton contends his no contest plea was unconstitutional because the trial judge accepted the plea without an affirmative showing that the plea was intelligent and voluntary. Specifically, Paginton argues that the court failed to comply with the requirements of Boykin v. Alabama, 395 U.S. 238, 242-44 (1969), which are codified in Oregon. See Or.Rev.Stat. §§ 135.385 and 135.390.
 
 
 4
 A state prisoner must exhaust his available remedies in state court before bringing a habeas corpus petition in federal court. 28 U.S.C. § 2254(b), (c). In Oregon, any person convicted of a crime under the laws of the state may file a petition for post-conviction relief pursuant to Or.Rev.Stat. §§ 138.510-138.680. The exhaustion requirement is excused only if there is no presently available state court remedy or process by which the prisoner can raise his claims.
 
 
 5
 The claim that Paginton's plea was not voluntary and intelligent was not an independent ground for relief alleged in the petition and it was never exhausted. As Paginton's lawyer points out in the "Objection to Magistrate's Findings and Recommendation" the validity of the no contest plea is relevant to this petition for establishing that Paginton was prejudiced by trial counsel's deficient representation. Consequently, we will evaluate the contention that the plea was not voluntary and intelligent only to determine whether Paginton was denied effective assistance of counsel.
 
 II. Ineffective Assistance of Counsel
 
 6
 Paginton contends he was denied effective assistance of counsel. He relies on several grounds to contend that his counsel's performance was constitutionally deficient. Specifically, Paginton maintains his counsel failed to:
 
 
 7
 1) conduct complete discovery; 2) investigate the charges adequately; 3) advise him of the nature and elements of the charge and the consequences of his plea; and 4) explain the plea petition to him.
 
 
 8
 In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that his attorney's conduct fell below the objective standard of reasonableness and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). While the performance and prejudice components of the ineffectiveness inquiry are reviewed de novo by this court, state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of 28 U.S.C. § 2254(d), and district court findings are subject to the clearly erroneous standard of Rule 52(a). Id. at 698.
 
 
 9
 a. Discovery
 
 
 10
 Paginton alleges his trial counsel, Mr. Judy, did not obtain complete discovery. He contends his attorney did not discover the victim's criminal record, which revealed a conviction for theft eleven days after the attempted shooting.
 
 
 11
 At the post-conviction hearing, Judy testified that he had filed a continuing discovery request with the District Attorney. Also, Judy testified that prior to Paginton's no contest plea he was aware that the victim had been arrested and charged with theft. Although Judy did not obtain a copy of the judgment in that case, he testified he was aware of the victim's conviction and sentence through discussions with the petitioner. Finally, Judy testified that, had the matter gone to trial, the victim's statement may also have been impeachable based upon the victim's admitted gross intoxication at the time of the shooting. We conclude that Judy's failure to obtain a copy of the victim's criminal record did not render his assistance ineffective.
 
 
 12
 Paginton also argues that his attorney failed to obtain a transcript of a statement by the victim to police officers after the incident. According to Paginton, competent counsel would have not only discovered the tape and transcript but would have recognized the crucial evidence contained therein that negated the intent element of attempted murder. He contends the neglected discovery would support a plea or verdict to a lesser offense, none of which could have resulted in the dangerous offender enhancement that Judy was concerned with avoiding.
 
 
 13
 The victim in this case was interviewed on four separate occasions. The first two interviews were conducted by the police. Although Judy testified he never saw the typed transcripts from those two interviews, he did have copies of the tapes from which the transcripts were made. According to Judy's testimony, he and an investigator conducted the third interview with the victim. (In addition, Judy informed the post-conviction court that he had taped the victim's statement at the hospital prior to even the police interviewing him.) Judy admitted that he did not receive a transcript of the final interview with the victim, which was conducted by the police. Nevertheless, by affidavit, Judy testified he was previously aware of the information gathered from that final interview. The victim had already given him an account of the incident that included all of the elements from the final interview that petitioner alleges he was prejudiced by because Judy did not discover that transcript. We conclude that Judy's failure to obtain the transcript from the final interview with the victim did not render his assistance ineffective.
 
 
 14
 b. Investigation
 
 
 15
 Paginton alleges he was denied effective assistance of counsel because Judy failed to investigate the charges adequately. Specifically, he argues that Judy's failure to interview Brad Trickel, whose testimony would have supported a defense of an accidental or non-intentional shooting, prejudiced his defense.
 
 
 16
 Although Judy did not interview Trickel, he did interview Randy Titus, a passenger in Trickel's car and the witness who remained at the scene. Both Trickel and Titus were interviewed by Sergeant Michels of the Josephine County Sheriff's Office two days after the shooting occurred. Sergeant Michels stated in his report that the statements of Trickel and Titus are "both basically the same." Additionally, Judy hired a private investigator to assist in the investigation of the charges; petitioned the court for the retention of a ballistics expert; and hired a psychiatrist to evaluate Paginton's competency to stand trial. We conclude that Judy did not fail to investigate the charges in a manner that denied Paginton his right to effective assistance of counsel.
 
 
 17
 c. Consequences of the Plea
 
 
 18
 Paginton states that "neither the court nor the prosecutor advised [him] of the nature and elements of the charge, and the consequences of abandoning the plea of not guilty." Relying on Iaea v. Sunn, 800 F.2d 861 (9th Cir.1986), Paginton argues that when the court fails to determine that a plea is intelligent and voluntary, defense counsel has a duty to supply criminal defendants with necessary and accurate information. Id. at 865.
 
 
 19
 We note, however, that Iaea does not require counsel to substitute for the court in order to ensure compliance with Boykin v. Alabama, 395 U.S. 238, 242-44 (1969). Although counsel must apprise criminal defendants with necessary and accurate information, "a mere inaccurate prediction, standing alone, would not constitute ineffective assistance." Iaea, 800 F.2d at 865. Rather, for a finding of ineffective assistance, there must be a "gross mischaracterization of the likely outcome ... combined with the erroneous advice on the possible effects of going to trial." Id.
 
 
 20
 Judy testified that he advised the petitioner that a plea of no contest would be considered the same as a guilty plea. He discussed with Paginton the potential for a claim of self-defense at trial. Additionally, Judy advised Paginton that a conviction was likely if the case went to trial, but he did not speculate on the sentence that may be imposed. Judy did, however, tell petitioner that it was likely he would receive dangerous offender treatment if convicted. He also told the petitioner that the District Attorney was not willing to reduce the charge, but agreed not to pursue dangerous offender treatment if Paginton pleaded guilty.
 
 
 21
 Contrary to Paginton's assertions, Judy testified that he did not tell him he would serve only 24 months. Rather, Judy indicated he told Paginton that with a five year minimum sentence because of the gun, he would be required to serve about 40 months if there was a reduction for good time. Additionally, Judy advised Paginton that the gun minimum could not be overturned by the Parole Board. Finally, we note that the no contest plea arose out of a concern over the possibility of a subsequent civil suit by the victim.
 
 
 22
 Pursuant to the no contest plea, Paginton was convicted and sentenced to serve 15 years in prison, with a mandatory minimum five year term for use of a firearm. We conclude that Judy did not grossly mischaracterize the outcome or erroneously advise Paginton on the possible effects of going to trial, thereby failing to provide effective assistance.
 
 
 23
 Paginton also argues that Judy failed to inform him of the specific intent to kill element. As to intent, Judy indicated that during initial conversations with Paginton, he had twice admitted to him that he had intended to kill the victim. At the post-conviction hearing, Judy testified that he did advise petitioner on the element of intent. We conclude that this comports with the standard enunciated by the Supreme Court in Henderson v. Morgan, 426 U.S. 637 (1976), and petitioner's claim of ineffective assistance under these circumstances must fail.
 
 
 24
 d. The Plea Petition
 
 
 25
 Paginton maintains that Judy never reviewed the no contest plea form with him. According to petitioner, Judy provided him a blank plea petition form to read and then subsequently rushed him into signing the completed form without providing him an opportunity to read it over.
 
 
 26
 Judy testified that he not only read the plea petition to Paginton, but that he actually wrote out part of the plea petition with him present in the jail. At his hearing to change his plea, Paginton assured the judge that he carefully reviewed the plea agreement with his attorney and understood the agreement. The State court's factual determination that Judy read the plea agreement to Paginton is fairly supported by the record, see 28 U.S.C. § 2254(d)(8), and we will not disturb that finding.
 
 
 27
 The district court's denial of Paginton's writ of habeas corpus challenging his conviction for attempted murder by a plea of no contest on the ground of ineffective assistance of counsel is affirmed.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3