[Cite as *In re L.H.*, 2021-Ohio-2849.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. John W. Wise, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : | Hon. Earle E. Wise, Jr., J. |
| IN RE L.H. (1) | : |  |
|  | : | Case No. 21CA000009 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Guernsey County Court
of Common Pleas, Juvenile Division,
Case No. 19JC00455

JUDGMENT:                                    AFFIRMED

DATE OF JUDGMENT ENTRY:      August 18, 2021

APPEARANCES:

For Father-Appellant:                        For GCCS-Appellee:

JEANETTE M. MOLL                          MELISSA M. WILSON
Jeanette M. Moll LLC                          274 Highland Ave.
P.O. Box 461                                     Cambridge, OH 43725
Zanesville, OH 43702

*Delaney, J.*

{¶1} Father-Appellant T.H. appeals the March 29, 2021 judgment entry of the Guernsey County Court of Common Pleas, Juvenile Division awarding permanent custody of his children, L.H. and L.H., to Appellee Guernsey County Children Services.

## FACTS AND PROCEDURAL HISTORY

{¶2}  Father-Appellant T.H. and Mother are the biological parents of twin children, L.H. and L.H. The children were born on October 7, 2014. Father and Mother are not married.

{¶3} Mother was the custodial parent of the children. It did not appear from the record that Mother and Father had any relationship together after the children were born. Shortly after the children were born, Appellee Guernsey County Children Services ("GCCS") started receiving reports regarding the children concerning drug abuse by Mother, that Mother frequently moved, or that Mother left the children with inappropriate people. GCCS had responded to approximately 25 to 30 reports. On August 6, 2019, GCCS received a report that Mother was using methamphetamine and she was living with an ex-boyfriend released from prison after serving time for manufacturing and distributing methamphetamine. GCCS put an out-of-home safety plan in place for the children. The safety plan was discontinued on August 16, 2019, because the caretaker tested positive for fentanyl.

{¶4} Mother signed a voluntary agreement for care on August 16, 2019. The children were placed in a foster home on August 16, 2019. Mother entered into a new voluntary agreement with GCCS on September 16, 2019. The voluntary agreement was extended on October 15, 2019 and November 14, 2019.

{¶5} From September 16, 2019 to November 2019, Mother was participating in services and tested negative for drugs. GCCS started progressive visitation with Mother. Mother, however, had taken a drug screen in November 2019 and the results were received in December 2019, showing a positive drug screen for oxycodone, for which Mother did not have a prescription.

{¶6} On December 12, 2019, the Guernsey County Court of Common Pleas, Juvenile Division filed an ex parte order for custody of the children to GCCS. GCCS filed a complaint on December 12, 2019, alleging the children were dependent and requested temporary custody. A probable cause hearing was held on December 12, 2019. By judgment entry issued on December 17, 2019, the trial court found probable cause to believe the children were dependent children. The trial court appointed counsel for Mother and Father. The CASA was appointed as the children's Guardian ad Litem. (Judgment Entry, Dec. 17, 2019).

{¶7} On February 12, 2020, GCCS filed the case plan for Mother. On February 14, 2020, Father moved to be added to the case plan.

{¶8} The trial court held the adjudicatory hearing on February 14, 2020. Via judgment entry filed February 18, 2020, the trial court adjudicated the children dependent pursuant to R.C. 2151.04(C). The trial court continued the temporary custody of the children with GCCS.

{¶9} The trial court held a dispositional hearing on March 6, 2020. Mother failed to appear at the hearing. Via judgment entry filed March 6, 2020, the trial court added Father to the case plan. The amended case plan was filed on March 19, 2020.

{¶10} A review hearing was held on May 29, 2020. Father failed to appear at the hearing.

{¶11} GCCS filed a motion for an annual review hearing on July 27, 2020. The trial court held a Review Hearing and Annual Review Hearing on August 28, 2020. The trial court granted a six-month extension of temporary custody of the children to GCCS. (Judgment Entry, Sept. 3, 2020).

{¶12} On December 9, 2020, GCCS filed a motion to modify dispositional orders to that of permanent custody of the children to GCCS.

{¶13} The permanent custody hearing was held on March 18, 2021. While Mother was personally served with notice of the hearing, Mother failed to appear. Father appeared at the hearing with counsel. The following evidence was adduced at the hearing.

{¶14} Amanda Kennedy, the ongoing caseworker with GCCS, had been involved with the case since August 2019. Kennedy made no mention of Father's involvement with the care of the children or relationship with the children prior to GCCS removing them from Mother's care. The March 19, 2020 amended case plan stated that Father had no contact with the children for approximately three years.

{¶15} When the children were first removed based on Mother's voluntary agreement, Mother was on a case plan and doing well. She received a positive drug screen in November 2019 and an ex parte order for temporary custody was granted on December 12, 2019. Mother's case plan required her to complete a drug and alcohol assessment and follow recommendations; participate in random drug screens; obtain a psychological assessment including a parenting assessment; and meet the children's

needs with housing, food, and medical needs. Mother completed her drug and alcohol assessment with Cedar Ridge on September 3, 2019 and was diagnosed with opioid use disorder and amphetamine type use disorder. Mother was discharged from Cedar Ridge on June 23, 2020 for her failure to attend. She reengaged services in October 2020 but was discharged on January 21, 2021. Mother did not refuse drug testing but consistently tested positive for methamphetamine and amphetamine.

{¶16} Mother participated in supervised visitation with the children. Her appearance at visitation was inconsistent but Kennedy said her visitation attendance was more consistent at the time of the permanent custody hearing. The children's visitation with Mother went well and the children appeared to be bonded to Mother.

{¶17} GCCS moved for permanent custody due to concerns that Mother continued to abuse illegal substances, inconsistencies with her visitation, and noncompliance with her services and case plan objectives.

{¶18} Father was added to the case plan on March 19, 2020. The case plan stated Father was to obtain a drug and alcohol assessment and follow the recommendations. Kennedy testified that Father completed an assessment on March 10, 2020 with Cedar Ridge where he was diagnosed with opioid use disorder, cannabis use disorder, and unspecified bipolar and related disorder. Cedar Ridge recommended individual therapy, case management, crisis support as needed, and urinalysis as needed. Kennedy testified Father only attended his intake and assessment and then attended a couple of case management but did not attend any other appointments. Father denied doing an assessment or counseling with Cedar Ridge because he stated no one at Cedar Ridge would return his phone calls. Father was also to complete a mental health assessment,

but he was discharged for his failure to follow through. Father testified that he had an appointment on March 24, 2021 with Guernsey Health Choices for drug and alcohol abuse counseling.

{¶19} Father was diagnosed with Crohn's Disease in 2004, which caused him chronic and sometimes debilitating pain. As part of his case plan, Father was to take random drug screens. Father was open with all parties that he used marijuana to cope with the symptoms of Crohn's Disease and he would not abstain from using marijuana due to his chronic illness. He tested positive for marijuana during the entirety of the case. Father testified that he had a medical provider, but due to insurance and other issues, he could not afford medication to assist with managing his Crohn's Disease. Kennedy suggested to Father that he obtain a medical marijuana card, but Father had not pursued that option at the time of the permanent custody hearing.

{¶20} Father also tested positive for Suboxone, oxycodone, and cocaine. Father admitted to taking Suboxone and oxycodone to manage his chronic pain but did not have a prescription for those medications. He testified he did not intentionally take cocaine but perhaps his marijuana had been laced with cocaine without his knowledge.

{¶21} The case plan also required Father to maintain employment and housing. Father was employed at Bob Evans but was laid off due to the pandemic. Kennedy testified that Father has an unspecified side job. He also received SSI. Kennedy testified that initially, Father had a rental residence. A week later, Father moved to a different rental residence. GCCS inspected the home and was concerned about the structure of the home. Father and the landlord had several disputes, involving the water being shut off, the driveway being blocked, and the landlord allegedly damaging the tires of Father's car.

Father reported being homeless in August. Father then lived at a residence that did not have heat or running water. Father next resided at a hotel from December 2020 to February 2021. Father's last known address was with his sister. The sister would not permit GCCS in the home.

{¶22} There was no testimony in the record as to Father's relationship with the children prior to GCCS involvement. The case plan permitted Father biweekly supervised visitation. Kennedy testified that Father had recently been inconsistent with his visitation due to transportation issues, and he was working more since his fiancé went to rehab. During the visits, Father was appropriate. He brought the children food and interacted with the children. Father testified he loved his children.

{¶23} Kennedy testified that with additional time, Father would not be able to reunify with the children due to his consistent noncompliance. He had moved residences multiple times, the residences were not appropriate for the children, and he had no compliance with the recommendations of Cedar Ridge.

{¶24} At the time of the hearing, the children were six years old. The children had been placed with the same foster parents since Mother entered into the voluntary agreement with GCCS. The children were bonded with the foster parents and called them "Mom" and "Dad." The children called Mother by her first name. The children did not have any medical or psychological diagnoses. One child was starting mental health therapy because the child was becoming physically aggressive with the sibling. At the time of the hearing, the children were in kindergarten and doing okay in school.

{¶25} GCCS had explored multiple kinship options given by Mother. Maternal Grandmother had previously cared for the children but stated she would need a lot of help

due to the children's behavior. The foster parents had not observed the behavioral issues expressed by Maternal Grandmother. GCCS explored placement of the children with friends of Mother, but either the individuals had moved out of the area or were not approved due to background and child welfare checks. Father had no recommendations for kinship placement. Father's adult son had initially contacted GCCS to inquire about placement with the children but did not respond when GCCS followed up with him.

{¶26} The Guardian ad Litem recommended the trial court award permanent custody of the children to GCCS.

{¶27} On March 29, 2021, the trial court issued its judgment entry awarding permanent custody of the children to GCCS. It first found the children could not be placed with the parents within a reasonable time or should not be placed with the parents. GCCS provided case planning and diligent efforts to assist the parents in remedying the problems that initially caused the children to be placed outside of the home, but the parents failed to continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside of the home. The trial court additionally found the parents demonstrated a lack of commitment toward the children by failing to consistently visit with them and by not providing an adequate permanent home for the children. The trial court finally found the termination of parental rights would be in the best interest of the children.

{¶28} It is from this judgment that Father now appeals.

**ASSIGNMENTS OF ERROR**

{¶29} Father raises three Assignments of Error:

{¶30} "I. THE APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO FILE A MOTION FOR A SIX MONTH EXTENSION BASED UPON THE GLOBAL PANDEMIC AND THE INSUFFICIENT TIME PROVIDED TO FATHER TO PROGRESS ON HIS CASE PLAN AND/OR FAILED TO OPPOSE THE PERMANENT CUSTODY MOTION ON THE SAME GROUNDS.

{¶31} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶32} "III. THERE WAS NOT CLEAR AND CONVINCING EVIDENCE FOR THE TRIAL COURT TO FIND THAT THE MINOR CHILDREN SHOULD NOT BE PLACED WITH APPELLANT AND THAT IT WAS IN THE MINOR CHILDREN'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF GUERNSEY COUNTY CHILDREN'S SERVICES."

**ANALYSIS**

**I. INEFFECTIVE ASSISTANCE OF COUNSEL**

{¶33} In his first Assignment of Error, Father contends he received ineffective assistance of counsel when his trial counsel failed to request an additional six-month extension. We disagree.

{¶34} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. See *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶35} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶36} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

{¶37} Father contends his trial counsel was incompetent for failing to request a six-month extension that was warranted due to several circumstances. One of the reasons Father argues includes was his inability to meet his case plan goals because of the limitations imposed by the COVID-19 pandemic. Father also contends that if given more time, he could obtain stable housing. Based on the record, we find trial counsel's choice to proceed with the permanent custody hearing without filing a motion for an

additional six-month extension fell within the range of reasonable conduct and Father cannot demonstrate that there was a reasonable probability the result of the proceeding would have been different.

{¶38} The trial court filed the ex parte order granting GCCS temporary custody of the children on December 12, 2019. On March 9, 2020, the Governor of Ohio issued Executive Order 2020-01D and declared a state of emergency in Ohio in response to COVID-19. A national emergency was declared on March 13, 2020. GCCS added Father to the case plan on March 19, 2020. On March 22, 2020, the Ohio Department of Health issued a stay at home order. GCCS filed the motion to modify the dispositional order to permanent custody on December 9, 2020. The permanent custody hearing was held on March 18, 2021. Father argues this timeline allowed him only eight months to complete his case plan. A six-month extension, he argues, would have permitted him time to complete his case plan objectives.

{¶39} GCCS argues in response to Father's Assignment of Error that Father's failure to complete his case plan objectives was due to his behavior, not the pandemic. One of the case plan objectives was to complete a drug and alcohol assessment and follow all recommendations. According to Kennedy's testimony, Father completed his intake with Cedar Ridge on March 10, 2020. Kennedy testified Father had appointments scheduled with Cedar Ridge and she reviewed the dates of his appointments with Cedar Ridge: March 11, 2020 case management – no show; March 13, 2020 case management – present; March 17, 2020 case management – no show; March 25, 2020 individual counseling – no show; March 27, 2020 individual telehealth counseling – no show; July 20, 2020 case management – present; August 25, 2020 case management – Father

canceled; January 19, 2021 intake assessment – no show; January 29, 2021 intake assessment – no show. (T. 23). Father had no memory of being seen by Cedar Ridge and argued he could not schedule an appointment with them. (T. 74).

{¶40} The case plan objective also required Father to take random drug screens. Before, during, and after the pandemic guidelines, Father tested positive for marijuana. Father used marijuana to manage the symptoms of his Crohn's Disease. Sympathetic to Father's chronic pain, Kennedy encouraged Father to seek out a medical marijuana card, to prevent Father from again using marijuana laced with a more severe illegal substance such as cocaine. (T. 72, 85). At the hearing, Father agreed that Kennedy had recommended he seek out a medical marijuana card but he did not follow up. He stated that about two months before the hearing, he got information from his sister regarding the medical marijuana program and he was now looking into it. (T. 72). There was no evidence presented at the hearing that the COVID-19 pandemic or related guidelines prevented Father from exploring and/or obtaining a medical marijuana card to address the symptoms of his chronic illness. Father testified that he had used marijuana since he was nine-years-old.

{¶41} Kennedy was asked at the hearing that if given more time, could Father reunify with the children. (T. 30). Kennedy testified that she did not believe he would be able to reunify with additional time because he had been noncompliant for the pendency of the case and continued to fail drug screens as recently as March 2021. (T. 30).

{¶42} Based on the record in this case, we do not agree that trial counsel was deficient for choosing not to request an additional extension of six months to allow Father to complete his case plan. We agree the pandemic could have made obtaining services

more complicated, but it appeared from Kennedy's testimony that Father had appointments scheduled with Cedar Ridge during the state of emergency and he did not attend the appointments. The pandemic also did not prevent Father from abstaining from illegal drug use or seeking out a legal option to obtain marijuana to address the symptoms of his chronic illness. While housing and employment were also elements of Father's case plan, the record shows Father failed to address two essential components of his case plan throughout the pendency of the case.

{¶43} Father's first Assignment of Error is overruled.

## II. and III. BEST INTERESTS

{¶44} In his second and third Assignments of Error, Father argues the trial court erred in finding it was in the best interests of the children to terminate Father's parental rights. We disagree.

{¶45} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶46} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody

of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶47} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶48} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶49} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

*Reasonable Time*

{¶50} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents. In his appellate argument, Father reviews the R.C. 2151.414(E)(1), (2), and (4) factors to argue the judgment of the trial court that the children could not be placed with Father within a reasonable time period or should not be placed with Father was against the manifest weight of the evidence.

{¶51} R.C. 2151.414(E)(1) states:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have

substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

Father contends he had made some progress on his case plan as to a drug and alcohol assessment. The record in this case shows that while Father completed the intake assessment with Cedar Ridge and attended some appointments (which Father denied doing), Father's testimony shows he took no other action to meet that case plan objective until scheduling an appointment on March 24, 2021 with Guernsey Health Choices. Father argues he could not meet his case plan objectives during the pandemic but the record shows Father had appointments scheduled with Cedar Ridge during the pandemic and Father did not appear for the appointments.

{¶52} Father was to obtain stable housing and employment as part of his case plan objectives. Kennedy testified that Father was working more while his fiancé was in rehab, but Father denied having employment. He received SSI due to his Crohn's Disease. Father had inconsistent and inappropriate housing during the case until he moved in with his sister. GCCS, however, was not permitted by the sister to enter her home to determine its suitability for the children.

{¶53} R.C. 2151.414(E)(2) states the trial court should consider,

Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home

for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

In 2004, Father was diagnosed with Crohn's Disease, a chronic inflammatory bowel disease. He testified the disease was severe, resulting in multiple surgeries and chronic pain, which was sometimes debilitating. The chronic illness limited his ability to work. To manage his symptoms, Father used marijuana. The marijuana utilized by Father, however, was not legally obtained as Father did not have a medical marijuana card. Father argues on appeal that with more time, he could obtain his medical marijuana card.

{¶54} The record shows that Father was informed of medical marijuana by Kennedy but Father testified he did not start looking into obtaining a medical marijuana card until the permanent custody hearing. During the pendency of this case, Father has tested positive for illegal substances such as marijuana, cocaine, oxycodone, and Suboxone. He conjectured he testified positive for cocaine due to a laced marijuana joint. He admitted to taking the Suboxone and oxycodone to control his pain but did not have a prescription for those medications. Father testified at the hearing that he had used marijuana since he was nine-years-old. (T. 71). The record in this case shows that Father is chemically dependent on marijuana and while it does manage the symptoms of his chronic illness, the record does not show that Father explored legal means to manage his disease to meet his case plan objectives to reunify with his children.

{¶55} Finally, R.C. 2151.414(E)(4) states, "The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an

adequate permanent home for the child." Father argues that he loves his children and he has attended visitation. He contends an extension would allow him to make further progress. The testimony showed that Father did attend visitation, somewhat inconsistently, and was appropriate with the children. There is no evidence in the record, however, that Father had a relationship with the children prior to them being in the temporary custody of GCCS and a case plan established Father's regular visitation.

*Best Interests*

{¶56} Father argues that pursuant to R.C. 2151.414(D), the trial court erred when it determined the children's best interests.  We disagree. The trial court found the children's relationship with Mother and Father to be inconsistent. Both parents visited the children and the visits were appropriate, but the parents' attendance at visitation was unreliable. The children were placed with the same foster family since the inception of the case on December 11, 2019. The children called the foster parents, "Mom" and "Dad." The children were doing fine in school and had a normal routine for six-year-olds. The children were too young to express their wishes but the GAL recommended permanent custody to GCCS.

{¶57} In this case, we find the judgment of the trial court to award permanent custody of the children to GCCS to be supported by the manifest weight of the evidence. Father's second and third Assignments of Error are overruled.

**CONCLUSION**

{¶58} The judgment of the Guernsey County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.